No. 98-177

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 237

296 Mont. 149

988 P.2d 765

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ROBERT BOSTWICK,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ronald Bissell, Public Defenders' Office, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Patricia J. Jordan,

Assistant Attorney General, Helena, Montana

Brant Light, Cascade County Attorney; Jeffrey Mora, Deputy

County Attorney, Great Falls, Montana

Submitted on Briefs: April 1, 1999

Decided: September 30, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶ **Robert Bostwick (Bostwick) appeals from the judgment and sentence entered by the Eighth Judicial District Court, Cascade County, on a jury verdict finding him guilty of two counts of felony criminal endangerment. We remand for further proceedings.**

¶ **The dispositive issue on appeal is whether the District Court erred in denying Bostwick a competency hearing.**

*BACKGROUND*¶ **On May 22, 1996, the State of Montana (State) charged Bostwick by information with two counts of felony criminal endangerment in violation of § 45-5-207(1), MCA (1995). The charges stemmed from an automobile accident on May 11, 1996, in which Bostwick wrecked a vehicle while driving through a residential area at over 60 miles per hour with a blood alcohol content of .18.**

¶ Bostwick pled not guilty to the charges and, at the omnibus hearing, notified the State that he would not rely on a mental disease or defect defense. In August of 1997, Bostwick moved for a mental health examination to determine whether he was fit to proceed to trial pursuant to § 46-14-202, MCA (1995). The District Court granted the motion.

¶ Patrick Davis, Ph.D. (Dr. Davis), a clinical psychologist, met with Bostwick four times in August of 1997, and conducted a series of tests and interviews. Based on those tests and interviews, Dr. Davis prepared a seven-page report (the Davis Report) which noted a number of knowledge deficits but also itemized at length Bostwick's reasonably good understanding of many of the facts and issues related to his case. The Davis Report also stated that Bostwick appeared to have the capacity to make necessary decisions about his case but "has chosen to defer such decision making to his mother." Dr. Davis ultimately opined that Bostwick was fit to proceed to trial provided certain accommodations were made at trial to allow for his slow thought processes. He further opined that Bostwick's competence to proceed would be maintained only if his mother were competent to make decisions about his case.

¶ Bostwick's counsel moved for a competency hearing, arguing that the Davis Report constituted substantial evidence that Bostwick might not be fit to proceed to trial. The State responded that a competency hearing was not necessary because Dr. Davis found Bostwick fit to proceed.

¶ The District Court concluded that, because neither party contested the Davis Report findings, § 46-14-221, MCA (1995), authorized it to make a competence determination without holding a hearing. With regard to Dr. Davis' statement that Bostwick's competence would be maintained only if his mother were competent, the court observed that who Bostwick looked to for advice was not a legitimate consideration in its determination of whether Bostwick was competent. Based on the Davis Report, the District Court concluded that Bostwick was fit to proceed to trial and scheduled a final pretrial conference hearing to consider, among other things, what accommodations should be made during trial for Bostwick's slow assimilation of information.

¶ During the pretrial conference hearing, Bostwick renewed his motion for a competency hearing. He relied on our recent decision in State v. Bartlett (1997), 282

Mont. 114, 935 P.2d 1114, arguing that due process required a hearing because sufficient doubt existed regarding Bostwick's fitness to proceed to trial. The District Court denied Bostwick's renewed motion without comment.

¶ Bostwick's case proceeded to trial and the jury found him guilty of two counts of criminal endangerment on September 10, 1997. Pursuant to statute, Bostwick moved for a neuropsychological evaluation for sentencing purposes. The District Court granted the motion and Mark H. Johnson, Ph.D. (Dr. Johnson) conducted the evaluation. In a nine-page report (the Johnson Report) detailing his evaluation, Dr. Johnson opined that Bostwick had borderline intellectual capacity and was at least moderately impaired, and suggested psychiatric consultations and medications. He also observed that, while he had not been asked to render an opinion about Bostwick's competence to proceed, he had concerns regarding Bostwick's capacity.

¶ During his sentencing hearing on December 16, 1997, Bostwick moved to vacate the verdict, arguing that he had not been fit to proceed to trial. He relied on the cumulative information in the Davis Report, the Johnson Report, his conduct during the trial and statements he made during the presentence investigation. The court denied Bostwick's motion and entered its judgment and sentence on January 9, 1998. Bostwick appealed.

¶ After filing the notice of appeal, Bostwick's counsel discovered a psychological evaluation dated January 28, 1998, conducted by Jack D. Hornby, M.D. (Dr. Hornby) for a separate criminal proceeding involving Bostwick. In his six-page report, Dr. Hornby concluded Bostwick was not competent to "clearly understand the nature of his legal situation or process nor able to participate as an informed individual in the process that is taking place." In light of the newly discovered evaluation, Bostwick moved for reconsideration. The District Court determined that it lacked jurisdiction and denied Bostwick's motion.

*DISCUSSION*¶ Did the District Court err in denying Bostwick a competency hearing?

¶ The District Court denied Bostwick's original motion for a competency hearing on the grounds that neither party contested the findings of the Davis Report and, as a result, it was authorized by § 46-14-221, MCA (1995), to determine Bostwick's competence on the basis of the Davis Report without holding a hearing. The court denied Bostwick's renewed motion for a hearing to determine his fitness to proceed

without addressing *Bartlett*, thereby implicitly concluding that the due process principles underlying *Bartlett* did not require a competency hearing for Bostwick. Our review of a trial court's determination of a question of constitutional law is plenary. State v. Compas, 1998 MT 140, ¶ 22, 290 Mont. 11, ¶ 22, 964 P.2d 703, ¶ 22 (citation omitted).

¶ On appeal, Bostwick does not challenge the court's determination that neither party contested the Davis Report findings or its conclusion that, under those circumstances, it could determine Bostwick's fitness to proceed without a hearing pursuant to § 46-14-221, MCA (1995). He contends that, the statute notwithstanding, *Bartlett* required the court to hold a competency hearing. We agree.

¶ The standard for determining whether a criminal defendant is mentally competent to stand trial is statutory in Montana. Pursuant to § 46-14-103, MCA (1995),

> [a] person who, as a result of mental disease or defect, is unable to understand the proceedings against the person or to assist in the person's own defense may not be tried, convicted, or sentenced for the commission of an offense so long as the incapacity endures.

The trial court must determine " 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him.' " State v. Santos (1995), 273 Mont. 125, 130, 902 P.2d 510, 513 (citations omitted).

¶ Furthermore, "due process requires that a hearing be held whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial." Griffin v. Lockhart (8th Cir. 1991), 935 F.2d 926, 929 (citations and footnote omitted).

> The hearing operates as a safeguard to ensure that an accused is not convicted while incompetent. A court's failure to hold a competency hearing when sufficient doubt as to the accused's competency is raised violates the accused's due process rights. The doubt raised as to an accused's competency need not come from the defendant or the defendant's attorney. A court has the duty to order a competency hearing *sua sponte* if the court has reasonable grounds for concluding that there is a good faith doubt as to a defendant's competency.

*Bartlett*, 282 Mont. at 120, 935 P.2d at 1117 (citations omitted).

¶ "The exact nature and amount of evidence necessary to establish a sufficient doubt [regarding competence] is uncertain--'no fixed or immutable signs . . . invariably indicate the need' for a hearing." *Griffin*, 935 F.2d at 930 (quoting Drope v. Missouri (1975), 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103, 118). It is clear, however, that a single indicia of doubt regarding a defendant's competency does not necessitate a hearing. Rather, the trial court must consider the totality of events in making its determination of whether to grant a competency hearing. *See* de Kaplany v. Enomoto (9th Cir. 1976), 540 F.2d 975, 983, *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815 (1977).

¶ Courts consider a variety of factors or indicia in determining whether sufficient doubt concerning a defendant's fitness to proceed exists so as to require a competency hearing.

> According to the Supreme Court, factors to consider include: (1) evidence of irrational behavior by the accused, (2) the demeanor of the accused at trial, and (3) any prior medical opinion on the mental competency of the accused to stand trial. Any one of these factors alone can, "in some circumstances, be sufficient."

*Griffin*, 935 F.2d at 930 (quoting *Drope*, 420 U.S. at 180, 95 S.Ct. at 908). Defense counsel's expressed doubt regarding the defendant's competency also is a factor to consider, but is not enough--standing alone--to create sufficient doubt about a defendant's fitness to proceed. *See Griffin*, 935 F.2d at 930 (citing *Drope*, 420 U.S. at 177 n.13, 95 S. Ct. at 906 n.13); *see also* Collins v. Housewright (8th Cir. 1981), 664 F.2d 181, 184.

¶ In *Bartlett*, we considered additional indicia such as the nature of the crime, the defendant's past behavior and, in some cases, a claimed defense of mental insanity in reviewing three cases advanced by the appellant. *Bartlett*, 282 Mont. at 121, 935 P.2d at 1118 (citations omitted). In one case, the accused's long history of disturbed behavior, including the murder of his infant child, the nature of his crime (the point-blank murder of his wife in front of many witnesses), and his defense of insanity raised sufficient doubt about his competence to warrant a hearing. *Bartlett*, 282 Mont. at 121, 935 P.2d at 1118 (citing Pate v. Robinson (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815). Similarly, an accused's previous attacks on his wife, attempted

suicide during his trial, and psychiatric reports relating to the requisite mental state also raised sufficient doubt as to his competence to warrant a hearing. *Bartlett*, 282 Mont. at 121, 935 P.2d at 1118 (citing *Drope*, 420 U.S. 162, 95 S.Ct. 896). In contrast, the nature and quantum of evidence relating to incompetence in Speedy v. Wyrick (8th Cir. 1984), 748 F.2d 481, did not raise sufficient doubt as to competence to require a hearing where the accused's crime was merely a crime of passion and "the accused's prior bizarre behavior, including a suicide attempt while awaiting trial, was balanced by psychiatrists' findings of competency." *Bartlett*, 282 Mont. at 121, 935 P.2d at 1118.

¶ We then examined the indicia of incompetence present in *Bartlett*, which included

> standby counsel's concerns as to whether Bartlett was "grounded enough in reality" to stand trial, her request for a competency evaluation, a prior mental health evaluation indicating a mental disorder, and Bartlett's obstreperous conduct during the pretrial phase of the second proceeding . . . .

*Bartlett*, 282 Mont. at 121, 935 P.2d at 1118. We also considered, however, the state hospital report indicating that Bartlett's refusal to cooperate in the mental examination was not the result of a mental disease. *Bartlett*, 282 Mont. at 122, 935 P.2d at 1118. Concluding that the indicia of incompetence which created sufficient doubt requiring a hearing in *Robinson* and *Drope* were greater than those in Bartlett's case, we ultimately held that the district court "was not presented with sufficient doubt as to Bartlett's competency so as to require a hearing[.]" *Bartlett*, 282 Mont. at 122, 935 P.2d at 1119.

¶ In the present case, numerous indicia of incompetence existed prior to trial. First, and most obviously, Bostwick's counsel expressed doubt regarding Bostwick's competence to proceed by requesting a § 46-14-202, MCA (1995), mental health examination, moving for a competency hearing and renewing that motion on *Bartlett* grounds during the final pretrial conference hearing. Pursuant to *Griffin*, 935 F.2d at 930 (citing *Drope*, 420 U.S. at 177 n.13, 95 S.Ct. at 906 n.13), and *Collins*, 664 F.2d at 184, defense counsel's doubt regarding the accused's competence, while not enough to establish sufficient doubt regarding competence to require a hearing, is a factor to be considered.

¶ The most significant evidence bearing on whether sufficient doubt about Bostwick's fitness to proceed existed so as to require a competency hearing, however,

is contained in the Davis Report. Dr. Davis gave Bostwick a standardized competency test called the Competency Screening Test (CST) and Bostwick scored 18. Dr. Davis reported that, according to the author of the CST, scores below 20 are thought to raise issues of competency and, as a result, Dr. Davis administered a more comprehensive structured competency interview called the Lawrence Present Mental Competency Test (LAW-COMP). The LAW-COMP "raise[d] some questions with regard to Mr. Bostwick's competency and also reveal[ed] a number of areas of knowledge deficit on his part." The results of these two tests are indicia bearing on Bostwick's competence which weigh in toward the establishment of sufficient doubt requiring a hearing.

¶ With regard to the § 46-14-103, MCA (1995), criteria relating to understanding the legal proceedings and assisting in the defense, the Davis Report reflected that Bostwick had "knowledge deficits," including

> that [Bostwick] did not know the name of his lawyer, *he does not know that he is charged with two counts of the same crime*, he has not read any of the reports in his case as a result of not having access to eyeglasses, he thinks that one must pay a fee to be released from jail on Own Recognizance [sic], he does not know what Motion to Suppress Evidence means, *he does not seem to be aware of the role the judge plays in sentencing, he does not know how a jury is selected, he is not aware of any pleas other than guilty and not guilty*, he does not appear to have a good understanding of the concept of incompetent to stand trial, he does not know what Suspended Sentence means, *he is unable to describe some of the important facts of his case such as the address at which the alleged crime occurred, the time or date or the alleged crime, or the names of the other individuals present at the time*, *he does not seem to understand how his lawyer will use the process of cross-examination to try and clarify any mis-information provided [by] a witness for the prosecution*, and he does not know what punishments are likely if a witness engages in perjury. [Emphasis added.]

In contrast, Dr. Davis outlined approximately twenty legal theories and procedures Bostwick apparently understood and summarized Bostwick's capacity as follows:

> Mr. Bostwick appears to demonstrate a reasonable capacity to understand his current legal situation as well as the charges against him. He has the capacity

to understand his legal rights *as well as the legal issues and procedures in his case*. He also appears to possess the capacity to understand *the role of defense counsel*, the prosecution, *the judge*, the jury, and the legal advisary [sic] proceedings, as well as the capacity to understand the range and nature of possible pleas, verdicts, dispositions, and penalties. *He has the ability to understand and disclose to counsel available pertinent facts surrounding the alleged crime*. He has the capacity to comprehend his attorney's instructions and advice, and, if necessary allowances are made for his very slow thought process, he has the capacity to follow court testimony for contradictions and errors, to so inform his attorney, and to realistically challenge prosecution witnesses. [Emphasis added.]

At best, the highlighted parts of these two portions of the Davis Report appear somewhat inconsistent. It is true that the first is denominated "knowledge deficits" which Dr. Davis believed were "correctable with education" and the second specifically addresses Bostwick's capacity to understand the proceedings and assist in the defense. We are not persuaded, however, that calling Bostwick's inability "to describe some of the important facts of his case" a "knowledge deficit" could be cured by education or otherwise; nor are we persuaded that such an inability can be squared with Dr. Davis' later statement that Bostwick has the ability to "disclose to counsel available pertinent facts surrounding the alleged crime." In any event, a comparison of these two portions of the Davis Report engenders some doubt regarding Bostwick's competence to understand the proceedings against him and to assist in his defense.

**¶ Finally, we observe that Dr. Davis determined early in his report that Bostwick's medical history likely was "quite relevant" to the evaluation, but that he was unable to review the pertinent records because Bostwick's mother advised Bostwick not to sign anything authorizing the release of the necessary medical records. Dr. Davis' statements in this regard were as follows:**

It should be noted that Mr. Bostwick refused to give me permission to request his medical records despite the fact that he appears to have a medical history which is quite relevant to the present evaluation. He reported that he suffered a head injury in childhood when he was run over by a car, that he attended special education classes in school until he dropped out, the police reports in his case suggest that he may have again suffered a significant head injury in the accident [in which] he was involved on May 11, 1996, he provides a

history of receiving mental health services at the New Directions Center which is an adult day treatment program run by the Golden Triangle Community Mental Health Center and which serves primarily individuals who are disabled by severe mental illness, and finally medical information provided by the jailers at the Detention Center indicate that he has been prescribed the medication Mellaril by Dr. Jon Walz. At this point it is unclear why this medication has been prescribed but reference to the Physician's Desk Reference reveals that this medication is used in the treatment of psychosis and/or depression with anxiety. Mr. Bostwick's reason for refusing to provide authorization for the release of these records was that he has been advised by his mother not to sign anything.

While the Davis Report is not clear whether or not Bostwick was taking the Mellaril at the time, the prescription itself was a red flag. The existence of the prescription, taken together with the limited information that Bostwick reported having received mental health services at a facility which primarily served people disabled by severe mental illness and may have had a head injury in childhood and another at the time of the accident on May 11, 1996, were additional factors going to the existence of sufficient doubt about Bostwick's competence to require a hearing under *Bartlett*.

¶ **The State urges, however, and the District Court determined, that Dr. Davis ultimately opined that Bostwick was competent to proceed. Indeed, the State posits that Dr. Davis' ultimate opinion precludes altogether the possibility of the existence of sufficient doubt regarding Bostwick's competence to understand the proceedings or assist in his defense. Thus, we must carefully scrutinize Dr. Davis' ultimate opinion.**

¶ **Dr. Davis stated his ultimate opinion regarding Bostwick's competency to proceed to trial as follows:**

It is my opinion, to a reasonable degree of medical certainty, if proper accommodations as described below are made during trial, and if Mr. Bostwick is receiving competent advice from his mother with regard to the decisions that he has made regarding his defense strategy, that Mr. Bostwick is competent to proceed. If such accommodations are not allowed, or if his mother is not a competent advisor, it would be my opinion that he is not competent to proceed as a result of his cognitive difficulties impairing his

capacity to effectively follow testimony for contradictions and errors, to so inform his attorney, to realistically challenge prosecution witnesses, to testify relevantly, and if necessary, to respond appropriately if cross-examined, and/or as a result of his inability to resist incompetent advice offered by his mother.

To ensure Mr. Bostwick's competency during trial it will be necessary to allow the trial to proceed at a very slow pace to allow Mr. Bostwick's attorney to confer with him frequently during the testimony provided. As such, it should be expected that Mr. Bostwick's attorney will frequently request the opportunity to confer with his client, perhaps on multiple occasions while witnesses are providing testimony. In addition, if Mr. Bostwick should elect to testify on his own behalf, the attorney for the prosecution will need to demonstrate extreme patience and restraint as any significant pressure placed upon, or hostility directed towards, Mr. Bostwick will quite likely result in an inability on his part to participate in the process in rational manner.

The issue of whether or not Mr. Bostwick is being influenced in a detrimental manner with regard to decision making in his case by his reliance upon his mother's judgment cannot be fully illuminated by the present evaluation since his mother's competency to make decisions on his behalf has not been assessed. It is clear, however, that while Mr. Bostwick possesses the capacity to make decisions on his own behalf, he trusts his mother's judgment more than he trusts his own and is willing to allow her to make decisions regarding his case for him. Given his long history of apparent dependency upon members of his family to make important decisions for him, taken in conjunction with his limited intellectual and cognitive abilities, he may not be able to resist the influence of his mother. As such, it is my opinion that if Mr. Bostwick's mother is competent to make decisions about his case, his competency would be maintained, however, if his mother is not competent to advise him it would be my opinion that he is not competent to proceed as a result of an inability to make independent rational decisions about his case.

The only fair reading of Dr. Davis' opinion is that it is, at best, a "conditional" opinion that Bostwick was competent to proceed. Indeed, the competence opinion is conditioned on the existence of at least two circumstances: 1) that Bostwick is receiving competent advice from his mother; and 2) that the accommodations outlined by Dr. Davis be made for the

trial phase. In our view, such a conditional competence opinion not only does not negate the possibility of sufficient doubt regarding Bostwick's fitness to proceed, it is, in and of itself, a significant indicator of doubt regarding Bostwick's competence.

¶ **The State also relies on a statement in the Davis Report that Bostwick has the capacity to make decisions important to his case but "has chosen" to defer such decisions to his mother. According to the State, this statement should put any concerns about Dr. Davis' first "condition" to rest. However, the State's position fails to take into account Dr. Davis' later statements that--given Bostwick's long history of dependence on his family for decision making and his limited intellectual and cognitive abilities--Bostwick**

> may not be able to resist the influence of his mother. As such, it is my opinion that if Mr. Bostwick's mother is competent to make decisions about his case, his competency would be maintained, however, if his mother is not competent to advise him it would be my opinion that he is not competent to proceed as a result of an inability to make independent rational decisions about his case.

Contrary to the State's argument, the inconsistency between the "has chosen" statement and the "may not be able to resist" statement also creates doubt about Dr. Davis' ultimate opinion that Bostwick was competent and is a factor the District Court should have considered in determining whether due process required a competency hearing for Bostwick.

¶ **In summary, Bostwick's counsel repeatedly expressed doubt regarding Bostwick's competence and Bostwick took two standardized competency tests which raised concerns regarding his competence. Further, the Davis Report contained conflicting evidence regarding Bostwick's competence, and Bostwick's medical history--while likely quite relevant and containing indicators of possible head injury and treatment for mental illness--was not obtained. Finally, Dr. Davis' ultimate opinion that Bostwick was competent was "conditioned" on several factors. On this record, and even confining our discussion to pretrial matters and evidence existing at the time of Bostwick's original and renewed motions for a competency hearing, the indicia of Bostwick's incompetence established sufficient doubt regarding Bostwick's fitness to proceed to trial to require a competency hearing.**

¶ **As a result, we conclude that the failure to grant Bostwick a competency hearing**

**violated his due process rights. We hold, therefore, that the District Court erred in concluding that a hearing was not required and in denying Bostwick's motion for a competency hearing.**

**¶ Our resolution of the dispositive issue raised by Bostwick does not end our consideration of this case, however, because the "What next?" question remains.**

> When a state court wrongfully fails to hold a competency hearing, it often may be impossible to repair the damage retrospectively. However, although retrospective competency hearings are disfavored, they are permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant.

Moran v. Godinez (9th Cir. 1994), 57 F.3d 690, 696, *cert. denied*, 516 U.S. 976, 116 S.Ct. 479 (1995) (citations omitted).

¶31 Therefore, we remand this case to the District Court to determine if a meaningful retrospective competency hearing can be held. In making this determination, the court should consider--but not be limited to--the passage of time, the contemporaneous medical and psychiatric evidence available, and the availability of witnesses who could offer testimony regarding Bostwick's competence during the pretrial and trial stages of this case. *See Moran*, 57 F.3d at 696.

¶32 If the court determines a meaningful retrospective competency hearing is possible, it shall conduct one. If, as the result of such a hearing, the District Court finds that Bostwick was competent at the time of the original proceedings, the damage resulting from the

erroneous failure to hold a competency hearing at that time is cured (*see Moran*, 57 F.3d at 696) and Bostwick's conviction and sentence may stand. On the other hand, if the court finds that Bostwick was not competent, it shall vacate Bostwick's conviction, judgment and sentence and proceed in accordance with § 46-14-221(2), MCA (1995).

¶33 Alternatively, the District Court may determine on remand that a meaningful retrospective competency hearing is not possible. In that event, Bostwick's conviction, judgment and sentence must be vacated and the State will be free to retry Bostwick subject, of course, to his competence to proceed at that time. *See Drope*, 420 U.S. at 183, 95 S.Ct. at 909, 43 L.Ed.2d at 120.

¶34 Remanded for further proceedings consistent with this opinion.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Justice James C. Nelson specially concurs.

¶35 I concur in our discussion of the "What next?" question and in our discussion of the dispositive issue as far as this latter discussion goes. Unfortunately, however, our decision on the dispositive issue fails to address and to condemn the elemental flaw underlying the limited proceedings to determine Mr. Bostwick's competency that were held prior to his first trial. With our failure, my concern is that this same fundamental error will be perpetuated in the further proceedings on remand.

¶36 As stated in the Court's opinion, Mr. Bostwick was ultimately determined fit to stand trial and to assist in his defense so long as his mother advised him and so long as she was "competent to make decisions about his case." Therein lies the problem. Regardless of whether this conclusion is reached without a hearing or after one, I cannot agree with the bizarre notion that, for purposes of Title 46, chapter 14, part 2, the mental fitness and competency of a criminal accused can somehow be determined by reference to and be dependent upon the mental fitness and competency of a third party. Quite simply, it cannot.

¶37 When, as here, a criminal defendant's mental fitness to stand trial and to assist in his defense is at issue the whole purpose and focus of the procedures in Title 46, chapter 14, part 2, is to assess the *defendant's* mental status and his alone. If the accused is not mentally fit to stand trial and to assist in his defense *in his own right*, then there is simply no basis in the law of which I am aware that will permit the defendant, nevertheless, to be tried because a competent, trusted family member or friend can advise him. Our system of

jurisprudence does not even allow a mentally unfit criminal defendant to be tried when advised by legal counsel--much less a third-party lay person untrained in the law--notwithstanding that the accused's attorney is professionally and ethically bound to represent his client's interests and notwithstanding that counsel is trained in the intricacies of criminal law and procedure.

¶38 The reason is obvious. The defendant, unlike the third-party advisor, is the fellow who if convicted will lose his life, liberty or property. As a consequence, the accused must be able to make decisions as to his case and defense based on his own understanding of the charges filed against him; based on his own knowledge of the facts; based on his own assessment of his particular situation; and based on his own evaluation of his lawyer's advice on tactics and strategy. Allowing substitution of the judgments and decisions of some third party on these critical matters for the judgments and decisions of the accused himself (because he is not mentally capable of making those judgments and decisions on his own) not only perverts the statutory scheme which the legislature has adopted but also effectively deprives the defendant of *his* right to appear and defend in person; of *his* right to demand the nature and cause of the accusation against him; of *his* right to confront witnesses; of *his* right to testify or remain silent; of *his* right to due process of law; and of *his* right to a fundamentally fair trial--all of which are rights guaranteed to the defendant *personally* under Article II, Sections 17, 24 and 25, of the Montana Constitution.

¶39 The bottom line is this. If Mr. Bostwick is not mentally capable of standing trial and assisting in his defense in his own right and without reference to and dependent upon his mother's mental competency and her advice, then he is not mentally fit to be further prosecuted. Period.

/S/ JAMES C. NELSON

Justice Terry N. Trieweiler joins in the foregoing specially concurring opinion.

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing specially concurring opinion.

/S/ WILLIAM E. HUNT, SR.

Chief Justice J. A. Turnage, dissenting.

¶40 I respectfully dissent from the majority decision to remand this case to the District Court for the purpose of determining if a meaningful retrospective competency hearing can be held.

¶41 The District Court, based on a report by Dr. Davis, concluded that defendant Bostwick was fit to proceed to trial. I agree with the District Court.

¶42 At the pretrial omnibus hearing, the defense represented that it would not rely upon a mental disease or defect defense, but that it would rely upon the defense of compulsion. The District Court determined that it was authorized by § 46-14-221, MCA, to make a decision based upon Dr. Davis's report without a hearing, since neither party contested that report. Accordingly, the District Court concluded that the defendant was fit to proceed to trial. A review of the record in this case, in my view, clearly establishes that the defendant was fit to proceed to trial, and the District Court did not err in so concluding.

¶43 During the early morning of May 11, 1996, Bostwick, after a prolonged period of drinking alcohol and with a blood alcohol content of .18--nearly twice the legal limit establishing drunken driving--drove his vehicle around residential areas of Great Falls, Montana, where the speed limit was 25 miles per hour, in excess of a speed of 66 miles per hour as estimated by law enforcement personnel. Bostwick drove his vehicle into a power pole, knocking it down, and also into a parked vehicle. The force of the collision was so severe that it required rescue personnel to use the jaws of life to remove Bostwick and his two passengers, all of whom were severely injured, from the Bostwick vehicle.

¶44 Bostwick was charged with two counts of felony criminal endangerment and was found guilty of each count by a jury.

¶45 The trial transcript commencing at page 263 and ending at page 275 contains the direct examination, cross-examination, and redirect examination of Bostwick. On direct examination his counsel posed 42 questions. To each of those questions, Bostwick was very capable of recalling events and giving relevant answers. In his answers, he also was able to establish what would be his proposed defense of compulsion, intended to convince the jury that he was compelled by threats to get in his car and drive it in the manner that he did.

¶46 On cross-examination by the county attorney, 34 questions were posed to Bostwick. He could remember nothing and, therefore, was unable to respond to any of those questions.

¶47 I believe the record clearly establishes that Bostwick had a highly-selective memory and was able to use it when it was to his advantage.

¶48 The presentence report in this case demonstrates that Bostwick is no stranger to court proceedings. He has been convicted of two prior felonies and also of two prior driving while intoxicated charges.

¶49 Bostwick has had a fair trial, and this case should not be remanded for further proceedings. I dissent.

/S/ J. A. TURNAGE