[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 173.]

THE STATE OF OHIO, APPELLEE, *v*. WERE, APPELLANT.

[Cite as *State v. Were*, 2002-Ohio-481.]

*Criminal law—Aggravated murder of a prison guard—Death penalty reversed and cause remanded for new trial, when—Under former R.C. 2945.37(A), now subsection (B), trial court must hold a competency hearing, when— An evidentiary competency hearing is constitutionally required, when.*

(No. 98-2197—Submitted September 18, 2001—Decided February 6, 2002.)

APPEAL from the Court of Appeals for Hamilton County, No. C-950908.

_____

SYLLABUS OF THE COURT

1. Under former R.C. 2945.37(A) (now subsection [B]), a trial court must hold a competency hearing if a request is made before trial.

2. An evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial. (*State v. Berry* [1995], 72 Ohio St.3d 354, 650 N.E.2d 433, followed.)

_____

FRANCIS E. SWEENEY, SR., J.

{¶ 1} In April 1993, inmates rioted at the Southern Ohio Correctional Facility in Lucasville, Ohio. During the upheaval, groups of inmates overpowered prison guards and held authorities at bay for several days. Before control was regained at the maximum security facility, several inmates and one guard were murdered. In this death-penalty case, defendant-appellant, James Were, was tried and found guilty of the murder of the prison guard, Robert Vallandingham.[1] Upon

_____

1. Although appellant was also tried for the murder of inmate Bruce Harris, the jury acquitted him of those charges.

appeal, the court of appeals affirmed. This cause is now before the court upon an appeal as of right from the court of appeals.

{¶ 2} Appellant raises thirty-one propositions of law for our consideration. However, because we find merit in appellant's claim in one of those propositions that the court committed reversible error, we do not reach the other issues. In proposition VIII, appellant asserts that he was deprived of a fair trial because the trial court failed to conduct a competency hearing as repeatedly requested by trial counsel. We find this argument meritorious. Accordingly, we overturn his convictions and death sentence and reverse and remand for a new trial.

{¶ 3} Fundamental to our adversarial system of justice is the due process right of a criminal defendant who is legally incompetent not to be subjected to trial. *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433, 438, citing *Pate v. Robinson* (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and *Drope v. Missouri* (1975), 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103. In *Dusky v. United States* (1960), 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825, the United States Supreme Court defined the test for competence to stand trial as whether the defendant " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him,' " quoting the brief of the United States Solicitor General.

{¶ 4} In R.C. 2945.37, the General Assembly codified the criminal defendant's right to a competency hearing and set forth the test to determine competency. At the time of Were's trial, this statute provided:

"(A) In a criminal action in a court of common pleas or municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. *If the issue is raised before trial, the court shall hold a hearing on the issue* as provided in this section. * * *

"A defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence *in a hearing* under this section that because of his present mental condition he is *incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense.*" (Emphasis added.) 142 Ohio Laws, Part I, 755-756.

{¶ 5} Thus, under former R.C. 2945.37(A), a trial court must hold a competency hearing if a request is made before trial. (Substantially the same requirement is now in subsection [B].) Our cases have underscored that requirement. See *State v. Hessler* (2000), 90 Ohio St.3d 108, 124, 734 N.E.2d 1237, 1253; *State v. Bock* (1986), 28 Ohio St.3d 108, 109, 28 OBR 207, 209, 502 N.E.2d 1016, 1018.

{¶ 6} Defense counsel filed a pretrial motion requesting a competency hearing on March 27, 1995. Although the trial court ordered a competency evaluation, the requested hearing was not held or waived. Instead, on August 23, 1995, the trial court issued a journal entry that determined competency without a hearing:

"The court finds that the Shawnee Forensic Center attempted to conduct a competency examination of the defendant as ordered by the court. The court finds that the defendant refused to speak with the examiners in a face to face confrontation with the defendant ordered by the court. A copy of this report is attached. The examiners concluded based on their information that defendant was intentionally refusing to cooperate as part of a deliberate ploy on his part to disrupt these legal proceedings. It was their further opinion that defendant is competent and is capable of understanding the nature and objective of the proceedings and assisting in his defense.

"The court finds defendant is competent to stand trial and these proceedings should continue as scheduled."

**{¶ 7}** Thus, based on the examiners' report, the trial court concluded that appellant was competent. Since appellant refused to meet with the examiners, this determination was made without the benefit of a psychiatric evaluation. Also, the court's decision was made without a defense stipulation to the report or a hearing on the matter. We find this to be error. The issue was raised prior to trial; thus, in accordance with the express language of the statute, the trial court was required to hold a competency hearing. Accordingly, we find that the trial court did not satisfy the requirement of a hearing in former R.C. 2945.37(A).

**{¶ 8}** Moreover, the record supports a further finding that the failure to hold a competency hearing was a constitutional violation. In *Berry, supra,* we stated, "The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." *Berry,* 72 Ohio St.3d at 359, 650 N.E.2d at 438, quoting *Drope v. Missouri* (1975), 420 U.S. 162, 175, 95 S.Ct. 896, 905, 43 L.Ed.2d 103, 115. We hold that an evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial. (*State v. Berry* [1995], 72 Ohio St.3d 354, 650 N.E.2d 433, followed.)

**{¶ 9}** Here, the record is replete with suggestions of appellant's incompetency. Defense counsel directly raised the issue and asked for a competency hearing on several occasions: (1) in the previously mentioned pretrial motion, (2) after opening arguments, (3) during the trial, and (4) before the mitigation phase began. While defense counsel was afforded the opportunity to offer reasons in support of their request for a competency hearing at these various points, they were never afforded an evidentiary hearing.

**{¶ 10}** Also, on many occasions, defense counsel directly or indirectly represented to the court that they believed appellant to be incompetent. For

instance, at a status conference held on July 18, 1995, defense counsel John Mackey stated that he had served for the past eight years as a part-time referee in probate court handling civil commitments. Based on this experience, he believed that appellant exhibited signs of paranoia and harbored suspicion against the defense team that, in counsel's view, could not be overcome.

{¶ 11} Additionally, defense counsel filed two separate motions to withdraw and a motion for a continuance. As grounds for these motions, counsel cited appellant's bizarre belief that counsel was taping confidential conversations and turning the tapes over to the state. Counsel also cited appellant's refusal to speak with them or any member of the defense team and his refusal to accept their correspondence. Counsel consistently claimed that appellant's failure to cooperate seriously hampered their ability to present a defense.

{¶ 12} Appellant's own letters and statements to the court suggest that appellant's paranoia centered on defense counsel. In addition to other *pro se* filings, appellant filed six *pro se* motions to dismiss his attorneys. He stated that his attorneys were racially biased, had threatened his life, were conspiring with the prosecution, and had failed to adequately prepare for the mitigation phase. The last argument ignored his refusal to speak with the mitigation specialist.

{¶ 13} The state admits that an evidentiary hearing on competency was not held. However, the state relies on *Bock, supra,* 28 Ohio St.3d 108, 28 OBR 207, 502 N.E.2d 1016, where this court found that the failure to hold a competency hearing was harmless error. We find that the state's reliance on *Bock* is misplaced. The facts in *Bock* are far different from those present in this case.

{¶ 14} In *Bock*, the court found harmless error in the trial court's failure to conduct a competency hearing in part because the defendant testified in his own defense and was subject to cross-examination, and the record failed to reveal sufficient indicia of incompetency. In addition, the court noted, "Defense counsel, after the original motion for a hearing, failed ever again to mention the defendant's

competency until the time for appeal." *Id.*, 28 Ohio St.3d at 111, 28 OBR at 210, 502 N.E.2d at 1019.

{¶ 15} Here, defense counsel continually raised the issue of appellant's competency. Also, unlike the defendant in *Bock,* appellant never testified during the guilt phase, and his unsworn statement offered during mitigation was not subject to cross-examination. Nor can it be said that the record here lacks sufficient indicia of appellant's incompetency. In addition to defense counsel's repeated allegations, the many *pro se* motions filed by appellant clearly cast doubt on appellant's competency.

{¶ 16} The court of appeals found that appellant's "intransigence" was to blame for the trial court's failure to hold the statutorily mandated hearing. However, the appellate court does not explain how appellant's refusal to speak with appointed mental health experts prevented the judge from conducting a hearing. Even without an interview, experts could have reviewed counsel's problems and the many letters and motions written by appellant. In addition, appellant could have been moved to a mental facility in order to be observed as requested by defense counsel. Moreover, the record does not support the lower court's conclusion that appellant was engaged in a "calculated effort to avoid prosecution by delaying the progress of the trial." In fact, the contrary may be true in light of appellant's stated desire to be brought to trial earlier.

{¶ 17} Understandably, appellant's intransigence and lack of cooperation were frustrating to the trial court. However, "[c]ommon sense dictates that no defendant can make a record of lack of competency absent the findings and hearings contemplated by R.C. 2945.37 and 2945.371." *Bock,* 28 Ohio St.3d at 113, 28 OBR at 212, 502 N.E.2d at 1021 (Wright, J., dissenting).

{¶ 18} Based on these facts, we conclude that the trial court violated appellant's constitutional and statutory right to a competency hearing. We find

appellant's proposition VIII to be well taken. Accordingly, we vacate appellant's convictions and sentence, reverse the judgment, and remand for a new trial.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, PFEIFER and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., dissents.

COOK, J., dissents.

———————————

**ALICE ROBIE RESNICK, J., dissenting**.

{¶ 19} I believe that the arguments the majority relies on are unpersuasive and inapposite to the conclusion it has reached in vacating the appellant's convictions and sentence and remanding the case for a new trial. I, therefore, dissent from the judgment of the court.

{¶ 20} The trial court aptly described the situation: "[T]he Shawnee Forensic Center attempted to conduct a competency examination of the defendant as ordered by the court. The court finds that the defendant refused to speak with the examiners in a face to face confrontation with the defendant ordered by the court. * * * The examiners concluded based on their information that defendant *was intentionally* refusing to cooperate as a part of a *deliberate ploy* on his part to disrupt these legal proceedings. It was their further opinion that defendant is competent and is capable of understanding the nature and objective of the proceedings and assisting in his defense." (Emphasis added.) How then can the trial court be found to have committed reversible error when the appellant himself refused to cooperate during the attempted evaluation? The trial court made a good-faith effort to comply with defense counsel's request, yet the only stumbling block to ensuring that a hearing would take place was the appellant's unwillingness to speak with the examiners assigned to determine his competence to stand trial.

**{¶ 21}** Furthermore, the majority's wide-ranging examples of appellant's supposed incompetence are equally unpersuasive. The appellant's desire to dismiss his counsel does not, in and of itself, lead to the conclusion that appellant is incompetent. Nor does the fact that defense counsel attempted to withdraw and to continue the case prove that appellant was incapable of understanding the charges against him. As the appellate court thoughtfully stated, "In those meaningful respects where objective evidence of the state of his competency might have been provided, Were acted with varying degrees of intransigence that, at times, rose to the level of an outright refusal to cooperate. In particular, he resisted any meaningful attempt to have his mental state evaluated by the court-appointed experts. In our view * * * Were's lack of cooperation was a symptom not of mental illness, but of his calculated effort to avoid prosecution by delaying the progress of the trial." *State v. Were* (Sept. 30, 1998), Hamilton App. No. C-950908, unreported, at 16, 1998 WL 682146. The appellant wittingly created every obstacle that has ultimately led this court to find in his favor. Moreover, due to the appellant's deliberate acts, there was no way the trial court could conduct a hearing. It is unfortunate that appellant's seemingly purposeful delay tactics have now been misconstrued as a violation of his due process rights. If any error occurred, it was invited error on the part of the appellant and certainly not reversible error as the majority has found. Thus, I would affirm the judgment of the court of appeals and impose the sentence of death on the appellant.

_____

**COOK, J., dissenting**.

**{¶ 22}** I fully agree with the legal principles set forth in the syllabus. And I also agree with the majority that the trial court violated Were's due process rights by failing to hold the pretrial competency hearing mandated by R.C. 2945.37. But despite my agreement with these aspects of the majority's decision, I cannot join the ultimate disposition of this case. Today's decision implies that a reversal and

remand for a new trial are the only remedy available to rectify the trial court's constitutional error. I would follow the lead of numerous jurisdictions, however, and order a remand to the trial court for the limited purpose of conducting, if possible, a retrospective competency hearing.

I

**{¶ 23}** The majority finds that the record contains "sufficient indicia of incompetence" that triggered Were's due process right to a competency hearing. See *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433, 438. I agree with the majority's conclusion in that regard, but for somewhat different reasons.

**{¶ 24}** Defense counsel first raised the issue of Were's competency to stand trial in a motion filed in March 1995. Following a court order for a psychological examination, which was not completed because Were did not cooperate, the trial court journalized an entry denying defense counsel's motion for a competency hearing. The court, relying on a psychologist's report and a letter from Were, found that "the defendant appears to be competent to stand trial" and noted that Were's "lack of cooperation alone is not sufficient to render him incompetent."

**{¶ 25}** In the months following the psychological examination, Were filed several *pro se* motions seeking removal of his counsel and appointment of new counsel. Were also requested new counsel at a pretrial hearing in July 1995, during which he told the court that his attorneys "show[ed] prejudice and racism towards me" and that he could not trust them because of their "trickery." Following this hearing, the trial court denied Were's request to have counsel removed and ordered a second psychological evaluation, despite the fact that the defendant had refused to cooperate with the previous evaluation. In a journal entry the court stated:

"The Court finds that counsel for defendant are competent, highly skilled practitioners fully capable of representing this defendant in these matters. The Court finds that counsel for defendant have filed numerous motions and received and reviewed voluminous discovery. The defendant on the other hand has refused

in every way to cooperate or assist his counsel in his defense. This failure to cooperate is *either* a deliberate tactic on the part of the defendant to inject error in these proceedings *or the product of some mental incapacity.*" (Emphasis added.)

{¶ 26} By expressly acknowledging the possibility that Were was incompetent to stand trial, the trial court implicitly acknowledged the existence of a genuine issue concerning Were's competency. See *Thompson v. Commonwealth* (Ky.2001), 56 S.W.3d 406, 407-408. This conclusion is further bolstered by the fact that one of Were's attorneys, who had conducted civil commitment proceedings as a probate court magistrate, advised the court that Were exhibited signs of a paranoid personality disorder that rendered him incapable of assisting in his defense. See *Drope v. Missouri* (1975), 420 U.S. 162, 177, 95 S.Ct. 896, 906, 43 L.Ed.2d 103, 116, fn. 13 (noting that a lawyer's representation about the client's competence "is unquestionably a factor which should be considered" in deciding whether to hold a competency hearing). Moreover, by ordering a further psychological evaluation, the trial court sent the implicit message that it no longer trusted its previous competency determination after having observed Were firsthand at the pretrial hearing.

{¶ 27} It is true that the trial court later concluded that Were was merely uncooperative with counsel and that Were was, in fact, competent to stand trial. And the trial court found nothing about Were's behavior during trial to change its opinion on that issue. But because the court had already found that a genuine issue existed concerning Were's competency, the due process requirement for a competency hearing was already triggered. The trial court therefore committed constitutional error by failing to conduct the pretrial competency hearing required by former R.C. 2945.37(A) (see R.C. 2945.37[B]).

## II

{¶ 28} Having found a constitutional violation, the majority reverses Were's conviction and remands for a new trial. In doing so, however, the majority

fails to consider a viable alternate remedy. Specifically, today's judgment overlooks the possibility of remanding this cause to the trial court for a retrospective competency evaluation. That is, this court could remand this case to the trial court for a hearing in which the state may establish the defendant's competency at the time of trial and, in effect, "demonstrate that the * * * trial court's failure to hold a competency hearing constituted harmless error." *James v. Singletary* (C.A.11, 1992), 957 F.2d 1562, 1571.

{¶ 29} Admittedly, reversal and remand for a new trial because of a trial court's failure to hold a constitutionally required competency hearing is consistent with United States Supreme Court precedent. See *Drope v. Missouri*, 420 U.S. at 183, 95 S.Ct. at 909, 43 L.Ed.2d at 119-120; *Pate v. Robinson* (1966), 383 U.S. 375, 386-387, 86 S.Ct. 836, 842-843, 15 L.Ed.2d 815, 822-823. In *Drope*, the court reversed the petitioner's conviction upon finding a due process violation and declined to remand for a determination of whether the petitioner was competent at the time of trial. "Given the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances * * *, we cannot conclude that such a procedure would be adequate here." *Drope*, 420 U.S. at 183, 95 S.Ct. at 909, 43 L.Ed.2d at 119-120. Similarly, the *Pate* court recognized "the difficulty of retrospectively determining an accused's competence to stand trial" and simply ordered the district court to grant habeas corpus relief rather than attempt to do so. *Pate*, 383 U.S. at 387, 86 S.Ct. at 843, 15 L.Ed.2d at 823, citing *Dusky v. United States* (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. In light of the admonitions in *Drope* and *Pate*, both state and federal courts have recognized that retrospective competency determinations are disfavored. See, *e.g.*, *United States v. Renfroe* (C.A.3, 1987), 825 F.2d 763, 767; *State v. Sanders* (2001), 209 W.Va. 367, 549 S.E.2d 40, 54.

{¶ 30} Though disfavored, however, retrospective competency determinations do not *per se* offend notions of due process. Numerous federal

circuits have held that retrospective determinations of competency are constitutionally permitted so long as a meaningful hearing on the defendant's competency at the prior proceedings is still possible. See *United States v. Auen* (C.A.2, 1988), 846 F.2d 872, 878; *Renfroe*, 825 F.2d at 767; *United States v. Mason* (C.A.4, 1995), 52 F.3d 1286, 1293; *Wheat v. Thigpen* (C.A.5, 1986), 793 F.2d 621, 630; *Cremeans v. Chapleau* (C.A.6, 1995), 62 F.3d 167, 169; *United States ex rel. Lewis v. Lane* (C.A.7, 1987), 822 F.2d 703, 706; *Reynolds v. Norris* (C.A.8, 1996), 86 F.3d 796, 802-803; *Moran v. Godinez* (C.A.9, 1994), 57 F.3d 690, 696; *James*, 957 F.2d at 1570, fn. 11. "A 'meaningful' determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original * * * proceedings." *Reynolds*, 86 F.3d at 802. A number of state courts have adopted this view and have remanded cases to trial courts for retrospective competency hearings rather than automatically reversing and remanding for a new trial. See *Sanders*, 209 W.Va. at 380-383, 549 S.E.2d at 53-55; *Thompson*, 56 S.W.3d at 409-410; *State v. Bostwick* (1999), 296 Mont. 149, 160-161, 988 P.2d 765, 772; *State v. Snyder* (La.1999), 750 So.2d 832, 855; *State v. McRae* (2000), 139 N.C.App. 387, 391-392; 533 S.E.2d 557, 560-561.

{¶ 31} Consistent with this weight of authority, I would remand this case to the trial court for the limited purpose of holding a retrospective competency hearing. On the record before this court, I see "no clear impediment" to the trial court's ability to retroactively assess Were's competency at the time of his trial. *Sanders*, 209 W.Va. at 381, 549 S.E.2d at 54.[2] This is not to say that a remand

---

2. When determining whether it is appropriate to remand a case for a retrospective competency hearing, a court should consider (1) the passage of time between the trial and the retrospective hearing; (2) whether contemporaneous medical evidence is available, including medical records and prior competency evaluations; (3) any statements by the defendant in the trial record; (4) the availability of witnesses (both expert and nonexpert) who interacted with the defendant during trial, including the trial judge, prosecutors, defense counsel, and jail officials. *Sanders*, 209 W.Va. at

would obligate the trial court to conduct a retrospective competency hearing if it found that it could *not* meaningfully determine whether Were was competent at the time of his trial. After all, "[t]he trial court is in the best position to determine whether it can make a retrospective determination of defendant's competency during his trial and sentencing." *Snyder*, 750 So.2d at 855, citing *Renfroe*, 825 F.2d at 767. If a trial court finds that it cannot conduct a meaningful retrospective inquiry or if the court holds a hearing and finds that a defendant was *not* competent to stand trial during the prior proceedings, a defendant would be entitled to a new trial (if and when he is competent). *Snyder*, 750 So.2d at 856; *Thompson*, 56 S.W.3d at 410; *McRae*, 139 N.C.App. at 392, 533 S.E.2d at 561. If a trial court holds a hearing and concludes that a defendant was competent, then no new trial would be required and this court could proceed to evaluate the merits of the remaining contentions on appeal. See *Snyder*, 750 So.2d at 856, citing *United States v. Haywood* (C.A.3, 1998), 155 F.3d 674; see, also, *Bostwick*, 296 Mont. at 161, 988 P.2d at 773. Because the majority chooses to reverse and remand Were's convictions without exploring the viable option of a retrospective competency determination, I respectfully dissent.

---

*Mark E. Piepmeier*, Special Prosecutor, and *William E. Breyer*, Assistant Special Prosecutor, for appellee.

*Elizabeth E. Agar* and *Julia A. Sears,* for appellant.

---

381, 549 S.E.2d at 54, citing *Clayton v. Gibson* (C.A.10, 1999), 199 F.3d 1162, 1169; see, also, *Reynolds*, 86 F.3d at 802-803; *Thompson*, 56 S.W.3d at 409.