[Cite as *State v. Harvey*, 2011-Ohio-1201.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Julie A. Edwards, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-CA-45 |
| DAVID L. HARVEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Richland County Court of
Common Pleas Case No. 09-CR-0663D


JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      March 4, 2011


APPEARANCES:

For Plaintiff-Appellee:      For Defendant-Appellant:

JAMES J. MAYER 0021148      CHARLES M. BROWN 0002950
Richland County Prosecutor      76 North Mulberry Street
38 South Park Street      Mansfield, Ohio 44902
Mansfield, Ohio 44902

KIRSTEN PSCHOLKA-GARTNER
0077792
Assistant Prosecuting Attorney
(Counsel of Record)

*Delaney, J.*

{¶1}   Defendant-Appellant, David Harvey, appeals the determination of the Richland County Court of Common Pleas, finding Appellant competent to stand trial and thereafter accepting his no contest plea to four counts of gross sexual imposition, felonies of the third degree, in violation of R.C. 2907.05.

{¶2}   The facts leading up to the convictions are as follows:

{¶3}   On May 24, 2009, five-year old M.S. was at her great-grandparents' house after church when Carol Harvey, Appellant's legally blind wife, asked M.S. why she was not wearing underwear under her church clothes.   M.S. reported to her great-grandmother that Appellant had removed her underwear, kissed her on the lips, touched her on her privates, and tried to "put his bottom [penis] into her bottom [vagina].

{¶4}   Mrs. Harvey contacted M.S.'s parents, S.S. and J.S,[1]  who came over immediately.   The parents took M.S. to Med Central Hospital for a sexual assault examination. The examination revealed redness in her vaginal area and three small bruises on the back of her thigh which appeared to be fingerprints.   M.S. was subsequently interviewed and reported that Appellant had sexually assaulted her previously.  M.S. stated that it happened "all the time" and that her clothes were typically removed during the encounters.  M.S. additionally reported that Appellant had made her touch his private parts in the past, but that the most recent time he had

---

[1] Initials are used to attempt to protect the identity of the minor child.

just "put his bottom in her bottom."

{¶5}    Additional investigation revealed allegations that Appellant had also sexually abused other children in the family, including his own daughter, D.K., and his grandchildren, B.H., J.H., K.K., and C.K.

{¶6}    Pastor Sonny Thayer of the Marion Avenue Grace Brethren Church had previously been made aware of the allegations and had encouraged the family to keep the matter private.  Instead of reporting the allegations to the authorities, Pastor Thayer counseled Appellant regarding the sexual abuse.

{¶7}    Appellant suffered a stroke in the summer of 2008 and his ability to speak became limited.  He was, however, able to function by completing his daily activities and could communicate in a limited manner.  He was able to provide short answers, he understood questions that were asked to him, and was able to identify family members by sight, and some by name.

{¶8}    On May 27, 2009, Sergeant Jeff McBride of the Richland County Sheriff's Office went to Appellant's residence to conduct a taped interview with Appellant. Appellant had difficulty communicating because of his stroke; however, it was the opinion of Sergeant McBride that Appellant was fully cognizant of the conversation, he was able to answer questions with yes or no answers, short phrases, and gestures. During the interview, Appellant admitted to sexually assaulting all of the victims with the exception of B.H.

{¶9}    As a result of the investigation, the Richland County Grand Jury indicted Appellant on one count of gross sexual imposition as it relates to M.S., a felony of the third degree, in violation of R.C. 2907.05 with a sexually violent predator specification

pursuant to R.C. 2941.148. Additionally, the Grand Jury indicted Appellant on three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), as they relate to victims J.H., K.K., and C.K.

{¶10} On September 11, 2009, Appellant filed a written plea of not guilty by reason of insanity. He also requested an evaluation to determine whether he was competent to stand trial. The trial court referred Appellant to the District V Forensic Diagnostic Center for evaluation. Dr. James Karpawich reviewed Appellant's medical records and conducted an interview with Appellant. Based on the interview and Appellant's medical records, Dr. Karpawich determined that Appellant was incompetent to stand trial because he lacked the ability to understand the nature of the proceedings against him and that he could not assist his attorney in his defense.

{¶11} Subsequent to Dr. Karpawich's evaluation, the trial court conducted a two day competency hearing, wherein defense counsel presented testimony from Dr. Karpawich, Appellant's daughter, D.K., who he has also been accused of molesting years earlier, and her husband, J.K.

{¶12} The State of Ohio called several witnesses as well. First, they called Richland County Adult Probation Officers Dan Myers and Lisa Snay, who were both involved in Appellant's pretrial supervision. Additionally, the State called M.S.'s parents, S.S. and J.S., Appellant's son, Ken Harvey, and Detective McBride.

{¶13} In rebuttal, Appellant then called Pastor Lester Vnasdale of the Grace Brethren Church.

{¶14} Following the presentation of the evidence, the trial court issued a written opinion on January 14, 2010, finding the Appellant competent to stand trial. Appellant

filed a motion for reconsideration, which the trial court denied. Appellant then entered a no contest plea to the indictment.

{¶15} Appellant was sentenced to an aggregate term of eleven years to life in prison with a mandatory five years of post release control. Appellant was additionally ordered to register as a Tier III sex offender.

{¶16} Appellant now appeals the trial court's finding of competency, raising one Assignment of Error:

{¶17} "I. THE DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 16, OF THE OHIO CONSTITUTION, IN THAT HE WAS FOUND GUILTY WHILE INCOMPETENT TO STAND TRIAL."

I.

{¶18} In his sole assignment of error, Appellant argues that the trial court erred in refusing to find him incompetent to stand trial. We disagree.

{¶19} A defendant is presumed competent to stand trial. R.C. 2945.37(G). If the issue of a defendant's competency is raised, the defendant must prove by a preponderance of the evidence that he is incompetent. See *State v. Pruitt* (1984), 18 Ohio App.3d 50, 480 N.E.2d 499. In order to find a defendant incompetent, the court must find that based on the defendant's present mental condition, he (1) is incapable of understanding the nature and objective of the proceedings against him; and (2) he is unable to assist in his own defense. R.C. 2945.37(G).

{¶20} A court is prohibited from finding a defendant incompetent because he is: (1) receiving or has received treatment as a voluntary or involuntary mentally ill or mentally retarded patient; or (2) receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication. R.C. 2945.37(F).

{¶21} At any time prior to trial, either the prosecution or defense may raise the issue of the defendant's competence to stand trial. R.C. 2945.37(B). If the issue of competency is raised prior to trial, it is mandatory for the court to hold a hearing on the issue. See R.C. 2945.37(B); *State v. Were* (2002), 94 Ohio St.3d 173, 761 N.E.2d 591, 2002-Ohio-481.

{¶22} A hearing on competency is to be heard within thirty (30) days after the issue is raised, unless the defendant has been referred for evaluation. See R.C. 2945.37(C). If the defendant has been referred for evaluation, the hearing shall be held within ten days after the filing of the report of the evaluation.

{¶23} Both the prosecution and defense counsel are permitted to submit evidence on the issue of defendant's competence.

{¶24} A written report of the evaluation of the defendant may be admitted by stipulation. If the parties do not stipulate to the evaluation or object to the admissibility of it, the report may still be admitted unless a "substantial injustice" will be done to the opposing party. See R.C. 2317.36. The party seeking to admit the report must give advance notice to the opposing party and afford him a reasonable opportunity to inspect and copy any records or other documents in the offering party's possession or control on which the report or findings were based. R.C. 2317.38.

{¶25} The examiner must file a written report with the court within 30 days after entry of a court order for evaluation and the court is required to provide copies of the report to the prosecutor and defense counsel. R.C. 2945.371(G).

{¶26} The report must include the following information: (1) the examiner's findings; (2) the facts in reasonable detail on which the findings are based; (3) if the examination was held to determine the defendant's competence to stand trial, all of the following findings that are applicable: (a) whether the defendant is capable of understanding the nature and objective of the proceedings against him or of assisting in his defense; (b) if the examiner's opinion is that the defendant is incapable of understanding the nature and objective of the proceedings against him or of assisting in his defense, whether he presently is mentally ill or mentally retarded and, if the examiner's opinion is that he is mentally retarded, whether the defendant appears to be a mentally retarded person subject to institutionalization by court order; (c) if the examiner determines that the defendant is incapable of assisting in his defense or cannot understand the nature and circumstances of the crime, whether the defendant can become capable of understanding such matters within one year if he is provided with a course of treatment; (d) if the examiner determines that the defendant is incapable of assisting in his defense or cannot understand the nature and circumstances of the crime, the examiner's recommendation as to the least restrictive treatment alternative, consistent with the defendant's treatment needs for restoration to competency and with the safety of the community. R.C. 2945.371(G).

{¶27} If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of

understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code. R.C. 2945.37(G). A trial court's decision will not be overturned absent an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.

{¶28} The trial court may consider an expert's credentials when determining the expert's credibility. *State v. Stanley* (1997), 121 Ohio App.3d 673, 700 N.E.2d 881. The court may also rely upon its own observations of the defendant, provided that the trial court has other competent credible evidence upon which to rely. Id. at 694. In this matter, there was evidence to support the trial court's observation of the defendant's competency.

{¶29} In reviewing the present case, this Court must determine first, if Appellant is capable of understanding the nature of the proceedings against him, and second, if he is able to assist in his own defense.

{¶30} The court made the following determinations of facts in its journal entry:

{¶31} "1. Defendant is a 75 year old man accused of molesting his daughters and granddaughters over many years. He is charged in this case with four counts of gross sexual imposition, the most recent allegations being an offense against his step-granddaughter on May 24, 2009.

{¶32} "2. On June 5, 2008, defendant had a stroke resulting in right-sided weakness and aphasia with poor naming and repetition abilities. Initially he could not speak at all. Although he has quickly recovered his mobility, he still has significant difficulty in speaking and writing.

{¶33} "3. James Karpawich, Ph.D., a clinical psychologist, who evaluated Mr. Harvey's competency at the District 5 Forensic Center, found great difficulty in communicating with Mr. Harvey, saying he couldn't tell from Mr. Harvey's responses whether he always understood his questions. He also noted the defendant had difficulty with the resulting limited verbal ability from his stroke in defining basic legal terms. He consequently opined that the defendant was unable to assist his attorney at trial and [was] incompetent to be tried. The court, based on the other evidence at [trial], finds that opinion not to be credible.

{¶34} "4. A few days after his stroke, the defendant began physical therapy and speech therapy. He is now able to exercise his own daily living skills and to assist his elderly wife (who is blind) with her needs.

{¶35} "5. Mr. Harvey lives a substantially normal life for a man of his age. He prepares the meals and does some of the housekeeping. He dispenses the medications he and his wife are taking and places them in their daily pill boxes. He writes down the sugar readings from a test instrument used daily for his wife. He travels by car alone to his own doctor and probation appointments and to haircuts and other errands. He drives his wife to her doctor appointments. He drives to the pharmacy to pick up their prescriptions.

{¶36} "6. He makes a grocery shopping list by copying names from empty containers to be checked over by his daughter. He drives to the store himself for the easy shopping like milk and bread and pays by credit card.

{¶37} "7. He takes his wife out for drives and out to eat at restaurants.

{¶38} "8.  Mr.  Harvey  enjoys  watching  television  and  is  a  sports  fan  who responds appropriately to televised sporting contests and other televised events.

{¶39}  "9. During the hearing, Mr. Harvey was heard to say to his attorney, John Allen, "John, I need the bathroom" showing that he remembers his attorney's name and can communicate with him.

{¶40}  "10. Mr. Harvey has a file folder in which he places legal papers for his criminal case.  He was able to fill out part of his pretrial supervision paperwork himself on September 11, 2009.

{¶41}  "11. Dan Myers, defendant's pretrial supervision officer, has made more than eight home visits to Mr. Harvey's home and has always been able to communicate with him.  Mr. Harvey always appears to understand Mr. Myers but sometimes has difficulty putting his words together in his response.  Mr. Harvey sometimes asks his wife to help with a name or word and often uses nonverbal communication like pointing. Mr. Harvey was able to explain to Mr. Myers the relationship of him to people pictured in a photo gallery in Mr. Harvey's hall and to tell him about his prior military service.

{¶42}  "12.  The recorded interview of Mr. Harvey by Sgt. Jeff McBride on May 27, 2009 about his crimes, placed in evidence, lasted more than a half hour.  That interview shows Mr. Harvey does understand the questions he was asked and responds appropriately but very often has difficulty in finding the words he is searching for.  His longest responses are short phrases like "It's not good," "I know that" and "My granddaughter."  This interview by Sgt. McBride shows that Mr. Harvey appreciates the seriousness of the charges and that he denies many of the allegations made by Sgt. McBride."

{¶43} Based on the trial court's finding, as well as our thorough review of the record, we find that Appellant failed to prove by a preponderance of the evidence that he was incompetent to stand trial. Appellant was able to understand the nature and objective of the proceedings, he was cooperative with his attorney, and always showed up to his probation appointments on Mondays.

{¶44} We agree with the trial court that difficulty in communicating is not an incapability to assist a defense. We find the trial court's conclusion that "it is reasonable that – if Mr. Harvey can be trusted to drive to his own doctor appointments and communicate with his doctor about his health – he can be trusted to communicate with his attorney whom he trusts."

{¶45} The most recent allegations against Appellant occurred over a year after his stroke. A difficulty in verbally communicating with others does not negate the fact that he can be criminally liable for his acts nor does it prove that he is incompetent to stand trial.

{¶46} The trial court made allowances for Appellant to have extra time to conference with his attorney when necessary during the hearing to communicate. The court also permitted a family member to assist in those conferences if any translation was needed. The court said that these conferences could happen as often as necessary during the trial.

{¶47} After the court issued its ruling, Appellant entered a plea of no contest, and the transcript of those proceedings further indicate that Appellant was able to understand the nature and consequences of the proceedings. Throughout the hearing, Appellant responded appropriately each time the trial court asked him a question. The

court repeatedly inquired about whether Appellant understood particular legal rights and concepts.  The court noted "everything is not just yes with him", meaning that Appellant responded appropriately to questions.

{¶48}  All of these factors indicate that the trial court did not abuse its discretion in finding Appellant competent to stand trial.

{¶49}  Appellant's assignment of error is overruled.

{¶50}  For the foregoing reasons, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.

Edwards, P.J. and

Gwin, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. JULIE A. EDWARDS

_____
HON. W. SCOTT GWIN

[Cite as *State v. Harvey*, 2011-Ohio-1201.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DAVID L. HARVEY | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10-CA-45 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed.  Costs assessed to Appellant.

_____

HON. PATRICIA A. DELANEY

_____

HON. JULIE A. EDWARDS

_____

HON. W. SCOTT GWIN