[Cite as *State v. Smith*, 2012-Ohio-261.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos. 96582, 96622, 96623

---

## STATE OF OHIO

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

## GEORGE SMITH

DEFENDANT-APPELLANT/
CROSS-APPELLEE

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-542832

**BEFORE:** Kilbane, P.J., Stewart, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 26, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Daniel T. Van
Sanjeev Bhasker
Assistant County Prosecutors
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


MARY EILEEN KILBANE, P.J.:

{¶ 1} This consolidated appeal arises from defendant-appellant's conviction and sentence for failing to register his address as a sex offender. Finding no merit to the appeal, we affirm.

{¶ 2} In October 2010, George Smith (Smith) was charged with failing to register in violation of R.C. 2950.04(E). The count carried a furthermore clause stating that Smith had previously been convicted of failing to verify his current residence in March 2006. Smith moved to dismiss the indictment in November 2010. Plaintiff-appellee/cross-appellant, the state of Ohio (State), opposed and the trial court

denied Smith's motion.   Smith then moved for a competency evaluation.   At a hearing

on November 29, 2010, the trial court addressed Smith's motion, stating that it was going

to refer Smith to the court psychiatric clinic.   The court, however, never journalized an

order to have Smith evaluated.   At this hearing, the trial court granted defense counsel's

motion to withdraw.   The trial court then appointed Smith new counsel, who represented

Smith at trial.

{¶ 3}   The following evidence was adduced at Smith's jury trial.

{¶ 4}   Vila Pintarich (Pintarich) testified that part of her duties as Correctional

Records Management Officer for Belmont Correctional Institution include ensuring that

sex offenders are properly registered.   Pintarich testified that she met with Smith on

September 1, 2010 and reviewed Smith's paperwork prior to his release from prison.   His

paperwork included a Notice of Registration Duties of Sexually Oriented Offender or

Child-Victim Offender Form (SORN)   and his postrelease control reporting orders.   The

SORN Form states that Smith's expected residence is 6209 Schade Avenue, Cleveland,

Ohio and that since his expected residential address is in Cuyahoga County, he is required

to register in person no later than September 4, 2010, with the Cuyahoga County Sheriff's

Office.   The SORN Form advises that the "[f]ailure to register * * * will result in

criminal prosecution."   Pintarich testified that Smith gave this address to his dorm

officer, who then relayed this information to Pintarich.

{¶ 5}   Pintarich further testified that her meeting with Smith was difficult.   First,

Smith "was adamant that he did not want to sign the PRC reporting orders."   Then, Smith

was adamant about not signing the SORN Form.   Since Smith refused to sign the SORN Form, Pintarich completed the part of the Form that states:   "[c]omplete this only if offender was unable to read, and official read notice to offender.   I certify that I specifically informed the offender of these duties as set forth above and the offender indicated to me an understanding of these duties."   However, on cross-examination, Pintarich testified that she "didn't get too far with [Smith] as far as explaining because * * * he was adamant that he didn't want to sign it."

{¶ 6}   Anita Phillips (Phillips) of the Adult Parole Authority testified that Smith was expected to meet with her on September 2, 2010, but he never reported to her.

{¶ 7}   Detective Susan DeChant (DeChant) of the Cuyahoga County Sheriff's Department testified that part of her duties include ensuring that a sex offender is in compliance with sex offender registration laws.   DeChant identified a journal entry indicating that Smith was classified as a sexual predator.[1]   DeChant also identified Smith's original notice of registration duties form, dated March 19, 2004.   DeChant further identified two other notice of registration duties forms, dated March 29, 2004 and June 29, 2004.   Smith signed these forms, but wrote "signed under duress" above his signature.   He signed the March 29, 2004 form when he initially registered with the Sheriff's office and the June 29, 2004 form on his next report date at the Sheriff's office.

---

[1]At trial, Smith stipulated that he was convicted of rape in July 1985 and failure to verify current residence in March 2006.

{¶ 8} DeChant then testified she was assigned this case when she was notified by Phillips that Smith had been released from prison. When Smith did not report to the Sheriff's office by September 4, 2010, she contacted Phillips who advised that Smith still had not reported to her. As a result, DeChant forwarded this information to Sergeant Clifford Pinkney (Pinkney) of the Cuyahoga County Sheriff's Department who arrested Smith on or about October 27, 2010, at the 6209 Schade Avenue address listed on the SORN Form.

{¶ 9} At the conclusion of trial, the jury found him guilty of failing to register and of the further finding that, in March 2006, Smith was previously convicted of failing to verify his current residence. The trial court, relying on this court's decision in *State v. Page*, Cuyahoga App. No. 94364, 2011-Ohio-83, sentenced Smith under Megan's Law as opposed to the Adam Walsh Act (AWA) and imposed a one-year prison sentence for a third degree felony. Smith's sentence was enhanced because of the furthermore clause.

Smith's Appeal

{¶ 10} In his appeal, Smith raises the following three assignments of error for our review, which shall be discussed together where appropriate.

ASSIGNMENT OF ERROR ONE

**"The trial court erred in denying [Smith's] motion for acquittal as to the charges when the State failed to present sufficient evidence to sustain a conviction."**

ASSIGNMENT OF ERROR TWO

**"[Smith's conviction is] against the manifest weight of the evidence."**
ASSIGNMENT OF ERROR THREE

**"[Smith's] rights were violated when he was convicted without ever having a competency hearing although he had been referred to the court psychiatric clinic."**

{¶ 11} In the first and second assignments of error, Smith challenges his conviction, arguing that there was insufficient evidence to sustain his conviction and that his conviction is against the manifest weight of the evidence.

{¶ 12} The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶113, explained the standard for sufficiency of the evidence as follows:

> **"Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560."**

{¶ 13} With regard to a manifest weight challenge, the

**"reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457**

**U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.”** *State v. Wilson*, 113 Ohio

**St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶25.**

{¶ 14} Moreover, an appellate court may not merely substitute its view for that of

the jury, but must find that “‘in resolving conflicts in the evidence, the jury clearly lost its

way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered.’” *Thompkins* at 387, quoting *State v. Martin* (1983),

20 Ohio App.3d 172, 485 N.E.2d 717. Accordingly, reversal on manifest weight grounds

is reserved for “‘the exceptional case in which the evidence weighs heavily against the

conviction.’” Id., quoting *Martin*.

{¶ 15} In the instant case, Smith was convicted of failing to register in violation of

R.C. 2950.04(E), which provides that “[n]o person who is required to register pursuant to

divisions (A) and (B) of this section, and no person who is required to send a notice of

intent to reside pursuant to division (G) of this section, shall fail to register or send the

notice of intent as required in accordance with those divisions or that division.”

{¶ 16} Smith argues that his conviction should be reversed because it is unclear as

to whether Megan’s Law or the AWA applies. It is undisputed that Smith was classified

as a sexual predator under Megan’s Law. In *State v. Bodyke*, 126 Ohio St.3d 266,

2010-Ohio-2424, 933 N.E.2d 753, the Ohio Supreme Court held that the reclassification

provisions of the AWA were unconstitutional, which meant that R.C. 2950.031 and R.C.

2950.032 may not be applied to offenders adjudicated under Megan’s Law. Id. at ¶66.

We note that the State indicated prior to the start of trial that it was prosecuting under Megan's Law. Thus, we will focus our analysis under Megan's Law.

{¶ 17} Under Megan's Law, Smith was required to register personally with the Cuyahoga County's Sheriff Office within five days of his release. See former R.C. 2950.04(A)(1).[2] In the instant case, a review of the record reveals that Smith still had not registered with the sheriff's office or reported to his parole officer by October 27, 2010, which is nearly two months after the five-day registration requirement. Thus, Smith failed to comply with the registration requirements of R.C. 2950.04(E).

{¶ 18} Smith further argues the State failed to establish that he was given proper notice or properly notified of the requirements expected of him. In support of his argument, he refers to Pintarich's testimony that she did not read the registration form to Smith. There is no evidence in the record that Smith did not receive notice, rather he refused to sign the form indicating that he had been informed of his duties. When Smith was released from prison, he was serving time for previously failing to verify an address. The testimony at trial revealed that Smith has been through the registration process before when he initially registered with the Sheriff's office when he was released from prison in 2004.

{¶ 19} Smith's refusal to sign his registration notification does not negate his duty to register. This court has found that "the failure to notify a sex offender of his duty to

---

[2]Under the AWA, an offender has three days after release to register. See R.C. 2950.04(A)(2)(a).

register does not affect the duty to register, which arises by operation of law." *State v. Johns*, Cuyahoga App. No. 92627, 2010-Ohio-68, ¶12, citing *In re Hawkins*, Hamilton App. No. C-080052, 2008-Ohio-4381. "As the Ohio Supreme Court made clear in *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, [773 N.E.2d 502,] * * * once a defendant is convicted of a sexually oriented offense, he is '*automatically classified* as a sexually oriented offender and therefore must register with the sheriff of the county in which he resides as prescribed by R.C. 2950.04(A)(2).' Id. at ¶15. (Emphasis added.) Thus, upon conviction of a sexually oriented offense, the classification and the duty to register arise by operation of law. Id.; see, also, *State v. Moncrief*, Cuyahoga App. No. 85479, 2005-Ohio-4812, at ¶23; *State v. Grider* (2001), 144 Ohio App.3d 323; *State v. Mickey* (Apr. 5, 2001), Cuyahoga App. No. 77889." *State v. Freeman*, Cuyahoga App. No. 86740, 2006-Ohio-2583, ¶14.

{¶ 20} Thus, we find that any rational trier of fact could have concluded that Smith failed to register with the sheriff's office after his release from prison. We further find that this is not the extraordinary case where the "jury lost its way" and created a manifest miscarriage of justice.

{¶ 21} Accordingly, the first and second assignments of error are overruled.

{¶ 22} In the third assignment of error, Smith argues his statutory and constitutional rights were violated when the trial court failed to conduct a competency hearing after referring Smith for a competency evaluation.

{¶ 23} We recognize that a defendant who is legally incompetent may not stand trial. *State v. Berry*, 72 Ohio St.3d 354, 359, 1995-Ohio-310, 650 N.E.2d 433, citing *Pate v. Robinson* (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 and *Drope v. Missouri* (1975), 420 U.S. 162, 95 S.Ct 896, 43 L.Ed.2d 103. In Ohio, a defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense. R.C. 2945.37(G).

{¶ 24} R.C. 2945.37(B) allows the trial court, prosecutor, or the defense to raise the issue of a defendant's competence to stand trial. In *State v. Were*, 94 Ohio St.3d 173, 2002-Ohio-481, 761 N.E.2d 591, paragraph one of the syllabus, the Ohio Supreme Court held that a competency hearing is required if the request is made before trial. Nevertheless, when a request for a competency evaluation is made prior to trial, the failure to hold the mandatory competency hearing is harmless error when the record fails to reveal sufficient indicia of incompetence. *State v. Bock* (1986), 28 Ohio St.3d 108, 110, 502 N.E.2d 1016.

{¶ 25} Accordingly, "[t]he right to a hearing 'rises to the level of a constitutional guarantee where the record contains "sufficient indicia of incompetence," such that an inquiry * * * is necessary to ensure the defendant's right to a fair trial.'" *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶156, quoting *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433. In *Bock*, the court defined incompetency as the "defendant's inability to understand '* * * the nature and objective

of the proceedings against him or of presently assisting in his defense.'" Id. at 110, quoting R.C. 2945.37(A). The court further explained that "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." Id.

{¶ 26} Moreover, this court, relying on *Bock*, has found that when a request for a competency evaluation is made prior to trial, the failure to hold the mandatory competency hearing is harmless error when the record fails to reveal sufficient indicia of incompetence. *State v. Almashni*, Cuyahoga App. No. 92237, 2010-Ohio-898,¶14, appeal not allowed by *State v. Almashni*, 126 Ohio St.3d 1582, 2010-Ohio-4542, 934 N.E.2d 355. In *Almashni*, the defendant's "first attorney requested a psychiatric evaluation of the defendant. The court granted the request and referred Almashni to the court psychiatric clinic for an evaluation as to competence to stand trial and sanity at the time of the act. No hearing was held regarding the results of the evaluation." Id. at ¶12.

{¶ 27} In finding that the record failed to contain sufficient indicia of incompetence, we relied on the fact that "[t]here is no motion in the file describing the original defense attorney's reasons for requesting the evaluation, nor does the court's journal entry indicate why the evaluation was ordered. Further, neither the second nor the third defense attorney requested an evaluation or brought to the court's attention that Almashni was incompetent." Id. at ¶14. See, also, *State v. Tong* (Mar. 10, 1994), Cuyahoga App. No. 64903, (where this court, also relying on *Bock*, found that without

sufficient indicia of incompetency in the record, the failure of the trial court to hold a competency hearing was harmless error and did not interfere with defendant's due process rights.)

{¶ 28} Similarly, in the instant case, the record fails to contain sufficient indicia of incompetence. The motion submitted by the original defense attorney lists no reason for requesting the evaluation, other than stating "[a]fter several conversations with Mr. Smith, defense counsel feels that it is in his best interests to file these Motions." At the November 29, 2010 hearing, the court stated that it was going to refer Smith to the court psychiatric clinic. Smith replied, "[f]or what? Ain't nothing wrong with me, your Honor." The court stated that it wanted to refer Smith to an evaluation out of an abundance of caution, but no order was ever journalized. Furthermore, at the hearing Smith indicated that he wanted new counsel, stating that current counsel "recommended and I told her that I didn't want to because I fail to enter a plea of guilt, because I won't enter a plea —." Moreover, subsequent defense counsel never requested an evaluation or brought to the court's attention that Smith was incompetent.

{¶ 29} Based on the foregoing, we find that there is nothing in the record to indicate Smith was incapable of understanding the nature and objective of the proceedings against him. Therefore, the error was harmless and Smith's third assignment of error is overruled.

State's Cross Appeal

**{¶ 30}** In its cross appeal, the State raises the following three assignments of error for review.

ASSIGNMENT OF ERROR ONE

**"The trial court imposed a sentence that was contrary to law because it did not apply the penalty in effect at the time of the offense."**

ASSIGNMENT OF ERROR TWO

**"Application of the version of R.C. 2950.99 in effect at the time of the offense to a sex offender who was previously classified under Megan's law does not violate the Separation of Powers Doctrine."**

ASSIGNMENT OF ERROR THREE

**"Application of the version of R.C. 2950.99 in effect at the time of the offense to a sex offender who was previously classified under Megan's Law does not violate the Retroactivity Clause of the Ohio Constitution."**

**{¶ 31}** Within these cross-assignments of error, the State argues that R.C. 2950.99, as amended through S.B. 97, should be applied to Smith even though he committed his sexually oriented offense prior to January 1, 2008, but he committed his registration offense after January 1, 2008. The State argues that the retroactive application of S.B. 97 does not violate constitutional principles.

**{¶ 32}** In the instant case, the trial court, relying on our decision in *Page*, sentenced Smith under Megan's Law to one year in prison for a third degree felony. The State, however, argues that the trial court should have sentenced Smith under the current version of R.C. 2950.99, which would have resulted in a mandatory minimum sentence of three years in prison. See R.C. 2950.99(A)(2)(b).

**{¶ 33}** In *Page*, the defendant was "convicted of importuning and was subsequently labeled a sexual predator under * * * Megan's Law, which, at the time, detailed the classification, registration, and notification requirements of convicted sex offenders. Former R.C. 2950 et seq. On August 2, 2006, Page was convicted under Megan's Law of failing to register as a sex offender and sentenced to one year in prison." Id. at ¶2. In July 2009, Page was "indicted under the AWA for failing to verify his address as a sex offender, with a furthermore clause indicating he had a prior conviction for violating Ohio's sex offender registration and notification laws. The furthermore clause enhanced the minimum penalty that defendant faced as a repeat offender from the possibility of parole to a mandatory three years in prison. R.C. 2950.06(F) and 2950.99(A)(2)(b)." Id. at ¶4.

**{¶ 34}** Page pled no contest to the charge and the court sentenced him to a mandatory minimum of three years in prison. Id. at ¶5. Page appealed, arguing that the trial court's sentence according to R.C. 2950.99 as effective at the time of sentencing violated his constitutional rights because it violates the ex post facto clause of the United States Constitution.

**{¶ 35}** In reviewing the AWA and the Ohio Supreme Court's decision in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, we explained:

> **"The AWA classifies sex offenders using a three-tiered system, with designation into each tier based solely on the offense committed. In addition, the AWA includes provisions that retroactively reclassify offenders previously classified under prior versions of the law. See R.C. 2950.031 and 2950.032. As the Ohio Supreme Court recently explained, '[t]he entire reclassification process is administered by the**

**attorney general, with no involvement by any court. There is no individualized assessment. No consideration is given to any of the other factors employed previously in classification hearings held pursuant to Megan's Law.' [Bodyke, at] ¶22.**

**In *Bodyke*, the Ohio Supreme Court held that reclassification of sex offenders under the AWA's R.C. 2950.031 and 2950.032, 'who have already been classified by court order under former law,' violates the separation-of-powers doctrine and is unconstitutional. Id. at ¶¶60-61. The *Bodyke* Court severed these provisions from the Ohio Revised Code, holding that 'R.C. 2950.031 and 2950.032 may not be applied to offenders previously adjudicated by judges under Megan's law, and the classifications and *community-notification and registration orders imposed previously by judges are reinstated.*' Id. at ¶66 (emphasis added).**

**This court recently applied Bodyke to reverse convictions based on violations of sex offender registration and notification requirements under the AWA, when the defendant was initially classified as a sexual offender under Megan's Law. The Ohio Supreme Court explicitly directed that the registration obligations of the prior law are to be reinstated in such cases. \* \* \* *Bodyke*, at ¶66.**

**In *State v. Smith*, Cuyahoga App. No. 92550, 2010-Ohio-2880, ¶29, this court held that because the reclassification under the AWA was unlawful, 'it cannot serve as the predicate for the crime for which [the defendant] was indicted and convicted.' See, also, *State v. Patterson*, Cuyahoga App. No. 93096, 2010-Ohio-3715; *State v. Jones*, Cuyahoga App. No. 93822, 2010-Ohio-5004. \* \* \*" Id. at ¶8-11.**

{¶ 36} In *Page*, we found that Page's reclassification under Ohio's AWA is contrary to law under *Bodyke*. Id. ¶12. We then stated, "[a]dhering to precedent in this district, convictions arising from alleged reporting violations under the AWA for any individual reclassified under its provisions are contrary to law as well. *Smith*; *Patterson*, supra. We [reversed Page's] conviction for failure to verify address in violation of R.C. 2950.06(F), vacate[d] his sentence, and [held] that [Page] is subject to the reporting

requirements, and penalties for violating these requirements, of sexual predators pursuant to Megan's Law." Id.

{¶ 37} Subsequent to our decision in *Page*, the Ohio Supreme Court decided *State v. Gingell*, 128 Ohio St.3d 444, 2011-Ohio-1481, 946 N.E.2d 192 and *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108. In *Gingell*, the court held that an offender who was originally classified under Megan's Law could not be convicted of violating the registration requirements of the AWA. Id. at ¶8. In *Williams*, the court held that S.B. 10, "as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws." Id. at syllabus.

{¶ 38} In the instant case, Smith was classified as a sexual predator under Megan's Law and the trial court sentenced him to a third-degree felony under Megan's Law. As the *Williams* court stated: "[t]he General Assembly has the authority, indeed the obligation, to protect the public from sex offenders. It may not, however, consistent with the Ohio Constitution, 'impose[ ] new or additional burdens, duties, obligations, or liabilities as to a past transaction.'" Id. at ¶22, quoting *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, 929 N.E.2d 415, ¶37. Thus, we find that the trial court properly sentenced Smith under Megan's Law to one year in prison.

{¶ 39} Accordingly, the State's first, second, and third cross-assignments of error are overruled.

{¶ 40} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
EILEEN A. GALLAGHER, J., CONCUR