[Cite as *State v. Sims*, 2013-Ohio-4704.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99495**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOSE A. SIMS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-565699

**BEFORE:** Rocco, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 24, 2013

**ATTORNEY FOR APPELLANT**

Robert A. Dixon
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, Ohio 44103

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: John Patrick Colan
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Jose A. Sims appeals from his convictions after the trial court found him guilty of murder and felonious assault.

{¶2} Sims presents two assignments of error, claiming that his behavior at trial should have prompted the lower court to conduct a hearing regarding his competency, and asserting that his trial counsel rendered ineffective assistance for failing to request such a hearing.

{¶3} Upon a review of the record, this court cannot find either any error on the part of the trial court or any deficiency on the part of defense counsel. Consequently, Sims's assignments of error are overruled, and his convictions are affirmed.

{¶4} Sims's convictions result from an incident that occurred on the afternoon of July 29, 2012. Sims, who suffers from bipolar disorder, arrived at his apartment with his girlfriend Ciera Matthews to find that his television set had been stolen from his locked bedroom. Sims immediately suspected that James Joyce, the man with whom he shared his apartment, had taken the item. The theft triggered Sims's ire; he began a hunt for Joyce.

{¶5} After failing to find Joyce in the building, Sims looked outside to see Joyce arriving in the area on foot. Another building resident, Katranada Sakatch, accompanied Joyce. Sims ran outdoors.

{¶6} Sims confronted Joyce in the parking lot of the convenience store that was located across the street from the apartment building. Sims punched Joyce, knocked him

to the ground, then began to hit and kick him. After a few minutes, when Joyce lay unresponsive, Sims left. He returned to Matthews and requested her to drive him away.

{¶7} The following day, without regaining consciousness, Joyce died from the injuries he received during Sims's attack. Sims eventually surrendered to the police.

{¶8} Sims was indicted in this case on three counts; he was charged with aggravated murder, murder, and felonious assault. Sims waived his right to a jury trial.

{¶9} After the presentation of the evidence, including video recordings made of the incident by store surveillance cameras, the trial court found Sims not guilty of aggravated murder, but guilty of the other two counts. The state elected at sentencing to proceed on the charge of murder, and the court sentenced Sims to a prison term of 15 years to life.

{¶10} Sims presents the following two assignments of error for this court's review.

**I. The lower court erred and denied the Appellant due process of law when it failed to conduct a hearing regarding his competence to stand trial.**

**II. The Appellant was denied effective assistance of counsel due to the failure of counsel to request a competency hearing.**

{¶11} In his first assignment of error, Sims argues that his behavior during the proceedings in conjunction with his medical history should have prompted the trial court sua sponte to conduct a hearing on the question of his competency. Sims asserts that the court's failure to do so violated his right to due process of law. This court, however, finds no fault with the trial court's management of the proceedings.

{¶12} In Ohio, a defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense. *State v. Smith*, 8th Dist. Cuyahoga Nos. 96582, 96622, and 96623, 2012-Ohio-261, ¶ 24-26, citing R.C. 2945.37(G).

{¶13} R.C. 2945.37(B) allows the trial court, prosecutor, or the defense to raise the issue of a defendant's competence to stand trial. In *State v. Were*, 94 Ohio St.3d 173, 2002-Ohio-481, 761 N.E.2d 591, paragraph one of the syllabus, the Ohio Supreme Court held that a competency hearing is required if the request is made before trial.

{¶14} Sims was arraigned in this case on August 27, 2012. Two weeks later, on September 11, the trial court ordered Sims's referral to the court psychiatric clinic for an assessment of his competency and sanity at the time of the act so that "recommendations regarding disposition" of Sims's case could be made.

{¶15} On November 8, 2012, the court called the case for a hearing. The court was concerned about a report it received from the county jail indicating that Sims had stopped taking his "Depakote and Zoloft." Sims explained to the court that the problem occurred only when he was asleep during disbursement times. Sims asserted that he continued with his psychiatric medications "every chance" that he had. The trial court noted it would continue monitoring the situation.

{¶16} On November 29, 2012, at the final pretrial hearing, the court stated that it had received the clinic's evaluation of Sims, authored by "Karl E. Mobbs," who stated his

opinion "with reasonable medical certainty that Mr. Sims is capable of understanding the nature and objectives of the charges against him, and he is presently capable of assisting counsel in his defense, therefore he was found to be competent."

{¶17} The report went on to reveal that, although Sims had "a severe mental illness" of "major depressive disorder, single episode, severe with psychotic features," the illness did not "interfere with his ability to know the wrongfulness of his acts on the day of the alleged offense," therefore, the report concluded Sims was sane at the time of the offense. Sims's defense attorneys stipulated to these findings.

{¶18} After stating these findings, the trial court addressed Sims personally to inquire about his rejection of the state's offer of a plea bargain. Sims responded to the court's questions and comments appropriately.

{¶19} One of his attorneys then informed the trial court that he had discussed the matter with Sims "numerous times," Sims "understands the plea" offer, but Sims did not want to accept it. Counsel further stated that he had "gone over" the state's evidence with Sims, so Sims was aware of "all the facts."

{¶20} When the trial court asked Sims if he was "thinking clearly today," Sims answered, "Yes. I'm not angry or depressed." Sims also indicated that he understood the subject of the discussion, and had no unanswered questions. Sims told the court that he knew the "legal" consequence of accepting the state's offer, i.e., that he "would not get out of jail until after 17 years." Sims further stated that for him, personally, "It means when I get out my son will be 19 and my daughter will be 18."

**{¶21}** He declined to agree to the offer, in spite of his awareness that, "If I'm found guilty I have — I will go to jail. If I'm not found guilty, I will be released." He stated he understood what the term "life" in prison meant: "It  — it means after 20 years I can go before the parole board but I don't necessarily have to be released." Sims also told the court that he knew, "according to his lawyer, if I get found guilty on a felonious assault, I could — I will be found guilty on murder statute B." Sims stated that, even so, he "can't take that plea."

**{¶22}** When the record fails to reveal sufficient indicia of incompetence, a failure to hold a competency hearing during trial is deemed to be harmless error. *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986). "The right to a hearing rises to the level of a constitutional guarantee [only] where the record contains 'sufficient indicia of incompetence,' such that an inquiry * * * is necessary to ensure the defendant's right to a fair trial." *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 156, quoting *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995).

**{¶23}** This court stated similarly in *State v. Smith*, 8th Dist. Cuyahoga No. 95505, 2011-Ohio-2400, ¶ 5:

> A hearing is not required in all situations, only those where the competency issue is raised *and maintained*. We acknowledge that once the issue is raised, there may be situations where the defendant exhibits *outward signs indicating the lack of competency* that may necessitate a hearing regardless of any stipulation. That issue is not present in the current case. The record does not contain any evidence that Smith exhibited any such signs.

(Emphasis added.)

{¶24} In this case, the record reflects that Sims's behavior caused the trial court to interrupt the proceedings on only one occasion. This occurred during the testimony of the physician who had treated the victim after his appearance at the surgical intensive care unit. The trial court stated:

> The record should reflect that during the course of the doctor's testimony, the Court noticed that Mr. Sims began to — his *body began to shake* and his legs — I don't know if I would consider him agitated. He *didn't look upset*, but I stopped the proceedings because I was concerned that he may need to be — I don't know. *I was concerned that there may be a safety issue, quite frankly,* and so the deputies took him into the back. They said that he was on the floor of the holding cell and that he was crying uncontrollably.
>
> They felt it would be in his best interest to take him down and to have him seen by the psych unit. * * *
>
> The record should reflect that my records indicate in the weekly reports that I receive that Mr. Sims has been completely med-compliant since being in the county jail, or at least for a number of months. He's been medication-compliant. He does have major depressive disorder with psychotic features.
>
> So I'm going to let them evaluate him. * * *

(Emphasis added.)

{¶25} The court opined that "[m]aybe he just needs someone to calm him down." Sims's defense counsel agreed with the trial court's "representation" of the situation.

{¶26} When Sims returned to the courtroom, the trial court addressed him to explain that it had been "concerned about" him, and that the medical evaluation had deemed him "okay to come back up to the courtroom." The trial court encouraged Sims to request "a break" in the proceedings should he need one. Sims indicated he would.

**{¶27}** From the foregoing, there is nothing to suggest that Sims was unable to assist in his own defense. Rather, the foregoing suggests that Sims had an issue simply with his impulse control. That conclusion is supported by the medical records of their client that Sims's attorneys introduced into evidence at trial.

**{¶28}** Sims's records demonstrate Sims had lengthy discussions with his therapist. His therapist expressed no concern over Sims's ability to reason. Sims's therapist's concerns for his patient were limited to Sims's continued medication management and to Sims's coping mechanisms for his depressive episodes and his explosive anger. As the court observed in *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986):

> Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.

**{¶29}** The record reflects that Sims "always addressed the court in an appropriate manner and demonstrated a complete understanding of the proceedings." *State v. Fhiaras*, 8th Dist. Cuyahoga No. 97740, 2012-Ohio-3815, ¶ 22, citing *State v. Smith*, 8th Dist. Cuyahoga No. 95505, 2011-Ohio-2400. Sims's trial counsel, moreover, did not indicate that they were experiencing any difficulties in communicating with him.

**{¶30}** Indeed, Sims provided cogent testimony in his own defense. Under the circumstances presented in this case, the trial court had no reason to conduct a hearing on the issue of Sims's competency. *State v. Almashni*, 8th Dist. Cuyahoga No. 92237, 2010-Ohio-898, ¶ 14.

**{¶31}** Consequently, Sims's first assignment of error is overruled.

{¶32} Sims argues in his second assignment of error, for largely the same reasons asserted in his first, that his defense attorneys rendered ineffective assistance by failing to request a competency hearing for him during trial. For largely the same reasons as stated previously, this argument also fails.

{¶33} In order to establish ineffective assistance of counsel, a defendant must demonstrate not only that counsel's performance fell below an objective standard of reasonable representation, but also that he was prejudiced by that performance. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989) paragraph two of the syllabus, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant establishes prejudice by demonstrating there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* at 694. A court must remain mindful that it must give deference to counsel's decisions, because trial tactics and strategies are not to be second-guessed. *Id.*

{¶34} The record in this case does not indicate that Sims's mental health in any way affected his ability to assist in his own defense. Sims made a logical decision to reject the state's plea offer and provided logical testimony in his own defense. Sims cannot demonstrate, therefore, either that his counsel were ineffective for failing to request another competency evaluation during trial or that the results of his trial would have been different had counsel done so. *State v. Grasso*, 8th Dist. Cuyahoga No. 98813, 2013-Ohio-1894, ¶ 72.

{¶35} Accordingly, Sims's second assignment of error also is overruled.

**{¶36}** Sims's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR