[Cite as *State v. Russell*, **2019-Ohio-692.**]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J |
| Plaintiff – Appellee | Hon. Patricia A. Delaney, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 18-COA-021 |
| RODNEY W. RUSSELL | |
| | |
| Defendant – Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:     Appeal from the Ashland County Court of
                             Common Pleas, Case No. 16-CRI-112


JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      February 25, 2019


APPEARANCES:


For Plaintiff-Appellee              For Defendant-Appellant

CHRISTOPHER R. TUNNELL              BRIAN A. SMITH
VICTOR R. PEREZ                     Brian A. Smith Law Firm, LLC
COLE F. OBERLI                      755 White Pond Drive, Suite 403
Ashland County Prosecutor's Office  Akron, Ohio  44320
110 Cottage Street, 3rd Floor
Ashland, Ohio  44805

*Hoffman, P.J.*

{¶1} Appellant Rodney Russell appeals the judgment entered by the Ashland County Common Pleas Court convicting him of three counts of rape (R.C. 2907.02(A)(2)), two counts unlawful sexual conduct with a minor (R.C. 2907.04(A)), kidnapping (R.C. 2905.01(A)(4)), abduction (R.C. 2905.02(A)(2)), and burglary (R.C. 2911.12(A)(3)), and sentencing him to an aggregate prison term of forty years. Appellee is the state of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} On May 27, 2016, J.G., a thirteen-year-old girl, was spending the day at the home of a family friend, known as "Boonie." J.G. spent the day with Boonie's sons, G.S. and B.S. Other people were in the house, including Appellant.

{¶3} Boonie left the house in the evening to purchase marijuana. Appellant previously told Boonie he was leaving and his mother had come to pick him up. However, Appellant came back in the house after Boonie left. Appellant walked into the room where J.G. was staying, and tried to grab her foot. When J.G. attempted to use her cell phone, Appellant threw the phone into a fish tank. J.G. ran downstairs. Appellant threatened the lives of J.G., G.S., and B.S., and the lives of their families. He ordered all three children into a closet, and destroyed B.S.'s phone before he could call 911.

{¶4} Appellant grabbed J.G. and told her to get in the bathroom. She told him no. Appellant picked J.G. up, threw her against a wall, choked her, and threatened to kill her if she didn't listen to him. She continued to fight, throwing a hair spray bottle at him. He picked her up and started choking her again. He told J.G. to take off her clothes. Initially she resisted, but eventually complied as his threats continued. Appellant removed J.G.'s pants and underwear, and put his tongue in her vagina. He put his penis in J.G.'s

mouth, and then placed his finger in her vagina. Appellant then bent J.G. over the tub and turned on the water so no one could hear.

{¶5} At this point, Boonie returned to the home. Appellant fled the house. J.G. wrapped herself in a towel and ran to Boonie, screaming Appellant had raped her. B.S. and G.S. came out of the closet, shocked, hysterical, and scared to death. Boonie immediately called 911.

{¶6} In the early morning hours of May 28, 2016, the alarm at a home at 1289 County Road 1356, near Boonie's home, was triggered. Ashland County Sheriff's Deputies Randy Wood and Randy Welch responded, along with Deputy Welch's K-9 partner, Eto. They discovered the basement door of the home had been kicked in and the alarm pad in the kitchen was ripped off the wall. Eto was sent into the attic during the search, and began barking. The deputies heard someone yelling to call off the dog. Upon entering the attic, they found Appellant hiding under a pile of items, with his leg in the dog's mouth.

{¶7} Appellant was indicted by the Ashland County Grand Jury with four counts of rape, three counts of unlawful sexual conduct with a minor, kidnapping, abduction, burglary, and two counts criminal damaging or endangering. Appellant pled Not Guilty By Reason of Insanity (NGRI), and asked for a competency evaluation. On September 19, 2016, Appellant was found incompetent to stand trial and committed to Heartland Behavioral Healthcare. Appellant was found restored to competency on November 29, 2016.

{¶8} The matter proceeded to jury trial on August 22, 2017. Just prior to trial, the court denied Appellant's NGRI plea based on lack of evidence, as Appellant refused to

participate in an evaluation for purposes of the plea and for a redetermination of competency. Following trial the jury found Appellant guilty of three of the four counts of rape, two of the three counts of unlawful sexual conduct with a minor, abduction, kidnapping, and burglary. The trial court merged the two counts of unlawful sexual conduct with a minor with two of the counts of rape. Appellant was sentenced to an aggregate prison term of forty years. It is from the October 2, 2017 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATE CONSTITUTION, AND ARTICLE I OF THE OHIO CONSTITUTION, IN FINDING APPELLANT COMPETENT TO STAND TRIAL WITHOUT CONDUCTING AN EVIDENTIARY HEARING.

II. THE FAILURE OF APPELLANT'S COUNSEL TO REQUEST AN EVIDENTIARY HEARING ON APPELLANT'S COMPETENCY TO STAND TRIAL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

III. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

IV. APPELLANT'S SENTENCE WAS CONTRARY TO LAW DUE TO THE KIDNAPPING AND RAPE COUNTS BEING ALLIED OFFENSES OF SIMILAR IMPORT, BUT NOT BEING MERGED FOR PURPOSES OF SENTENCING.

I.

**{¶9}** In his first assignment of error, Appellant argues the court erred in failing to conduct an evidentiary hearing on his competence to stand trial.

**{¶10}** R.C. 2945.37(B) provides:

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

**{¶11}** The standard for competence is set forth in R.C. 2945.37(G):

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

**{¶12}** If the issue of competence is raised prior to trial, it is mandatory for the court to hold a hearing on the issue. *State v. Were*, 94 Ohio St.3d 173, 761 N.E.2d 591, 2002–Ohio–481. The determination whether to conduct a mid-trial competency hearing is normally a matter committed to the sound discretion of the trial court. *State v. Berry*, 72 Ohio St.3d 354, 1995-Ohio-310, 650 N.E.2d 433, *citing State v. Rahman*, 23 Ohio St.3d 146, 156, 23 OBR 315, 323, 492 N.E.2d 401, 410 (1986).

**{¶13}** Appellant filed a plea of not guilty by reason of insanity prior to trial, also raising his competence to stand trial. Appellant argues the court failed to conduct an evidentiary hearing on competence at this time. While we do not have a transcript of the initial competency hearing, the judgment of the court filed September 19, 2016, provides in pertinent part as follows:

> This matter came before the Court for consideration of the Defendant's psychological evaluation to determine his competency to stand trial. Present for the hearing were Assistant Ashland County Prosecuting Attorney Christopher Ballard, the Defendant, and Attorney for Defendant, R. Rolf Whitney. The hearing was conducted by video with a full and complete record being made, and the Defendant participated from the Ashland County jail.

> The Court proceeded with a hearing on the issue of Defendant's incompetency, and all parties stipulated to the admission of the Forensic Diagnostic Center Psychological Evaluation dated August 29, 2016 pursuant to R.C. 294.37 [sic]. No other evidence was offered by the parties.

Based upon the evidence before the Court, as well as the recommendations of Dr. Brian O'Reilly of the Forensic Center, the Court finds that the Defendant, Rodney W. Russell is incompetent to stand trial, and there is a substantial probability that the Defendant will become competent to stand trial within one year if the Defendant is provided with a course of treatment.

{¶14} The record therefore does not support Appellant's claim the court failed to hold a hearing on the issue of competency.

{¶15} A restoration to competency hearing was held on November 29, 2016, at which the parties stipulated to the restoration to competency report, filed under seal December 2, 2016.

{¶16} On April 17, 2017, the court held a hearing on Appellant's plea of not guilty by reason of insanity. Appellant was represented by new counsel at this hearing. Counsel expressed concerns Appellant had fallen back to incompetency and requested a new competency evaluation. Counsel told the court Appellant would not meet with him, and would not cooperate with the NGRI evaluation. Appellant adamantly asserted his own competence at the hearing in a profanity-laced diatribe to the court, insisting, "I am very fucking competent." 4/17/17 Tr. 12-13.

{¶17} After Appellant was dismissed from the hearing, the court expressed concerns about Appellant's competence. The court represented he was inclined to send Appellant back to Heartland or have an independent examiner sent to the jail, as the court needed information.

{¶18} On April 21, 2017, the court ordered Appelant admitted to Heartland Behavioral Healthcare for an assessment for both NGRI and competency. A warrant for his removal to Heartland was filed April 25, 2017. Counsel for Appellant filed a second motion for a competency evaluation on May 5, 2017.

{¶19} A judgment filed May 17, 2017, reflects the court held a NGRI and competency hearing on May 15, 2017. Appellant had been evaluated at Heartland by Dr. Noffsinger[1]. The State stipulated to the report, but Appellant did not stipulate and requested an evidentiary hearing. The Court advised Appellant he was responsible for issuing subpoenas for any necessary witnesses for said hearing, and scheduled the motion for competency and NGRI for evidentiary hearing on May 30, 2017.

{¶20} On June 8, 2017, the court issued judgment concerning a hearing on June 7, 2017. The judgment recites at the hearing, counsel for Appellant stated he had no basis to challenge the findings of Dr. Noffsinger and advised he would file a motion for a second evaluation by District V Forensic Diagnostic Center. The court subsequently ordered a forensic evaluation be conducted on Appellant at the jail related to the motions for a competency evaluation and his NGRI plea.

{¶21} The trial court held a hearing on August 17, 2017. At the hearing, the court noted Appellant refused to cooperate with the expert evaluation at the jail, and therefore the court found Appellant competent to stand trial, based on the latest expert evaluations filed with the court.

{¶22} The record demonstrates the trial court went to great lengths to protect Appellant's rights with regard to his competence to stand trial. However, when Appellant

---

[1] Dr. Noffsinger's report is not part of the record before this Court on appeal.

was unwilling to cooperate with the evaluation at the jail, the only evidence before the court was the stipulated report filed December 2, 2016, representing Appellant had been restored to competency, and the report of Dr. Noffsinger, which from the record we presume found Appellant competent, and which ultimately Appellant determined he could not challenge.    Appellant was given an opportunity for an evidentiary hearing on his second request for a competency evaluation, but ultimately decided to accept the report of Dr. Noffsinger.  When Appellant refused to cooperate with the independent evaluation, the court did not err in proceeding to trial.

{¶23}  Appellant argues his conduct at trial bears indicia of incompetence.  The decision whether to hold a competency hearing mid-trial lies within the discretion of the court.  *Berry, supra.*  Appellant's behavior when he initially chose to participate was profane and disruptive.  He subsequently chose not to be present. However, Appellant's unwillingness to cooperate with counsel and behave appropriately in court does not demonstrate he was *incapable* of understanding the nature and objective of the proceedings against him or of assisting in his own defense.  We find the court did not abuse its discretion in failing to hold a competency hearing sua sponte mid-trial.

{¶24}  The first assignment of error is overruled.

II.

{¶25}  In his second assignment of error, Appellant argues counsel was ineffective for failing to request an evidentiary hearing on competency at the August 17, 2017 hearing.

{¶26}  Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio

adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶27} Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, *quoting Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶28} Appellant has not demonstrated prejudice from counsel's decision not to request an evidentiary hearing on competence at the August 17, 2017 hearing. Counsel previously requested an evidentiary hearing on competence, but ultimately determined he could not challenge the findings of Dr. Noffsinger. He requested an evaluation of

Appellant at the jail, and the court granted his request. However, Appellant refused to participate in said evaluation. At the time of the August 17, 2017, hearing, counsel had no expert basis on which to request an evidentiary hearing due to Appellant's unwillingness to participate. All the evidence available to counsel and the court on August 17, 2017, appears to indicate Appellant was competent to stand trial. Appellant has not demonstrated had counsel requested a hearing, he would have been found incompetent to stand trial.

{¶29} The second assignment of error is overruled.

III.

{¶30} Appellant argues his convictions are against the manifest weight of the evidence. Specifically, he argues the convictions of rape and burglary are against the manifest weight of the evidence.

{¶31} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶32} Appellant was convicted of three counts of rape in violation of R.C. 2907.02(A)(2), which provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶33} Appellant argues J.G.'s timeline of events is not believable, as she originally testified Appellant first approached her at "maybe 9:00," which was not consistent with Boonie's testimony he arrived home at midnight. When cross-examined as to whether the attack went on for three hours, J.G. explained she watched a movie for an hour and a half, then went upstairs and was on her phone, which is when the attack happened. When asked if she was mistaken when she mentioned 9:00, she testified, 'Best guess because I don't know." Appellant argues this inconsistency calls her reliability into question. He further argues the State failed to establish a complete chain of custody for the rape kit after its delivery to BCI and subsequent internal handling at BCI. He argues the DNA evidence was inconclusive as to specific contact between Appellant and J.G.

{¶34} J.G.'s inability to recall the exact time Appellant began the attack does not render her testimony completely unreliable. She testified Appellant walked into the room where J.G. was staying, and tried to grab her foot. When J.G. attempted to use her cell phone, Appellant threw the phone into a fish tank. J.G. ran downstairs. She testified Appellant threatened the lives of J.G., G.S., and B.S., and the lives of their families. He ordered all three children into a closet, and destroyed B.S.'s phone before he could call 911.

{¶35} J.G. testified while the boys were in the closet, Appellant grabbed her, and told her to get in the bathroom. She told him no. Appellant picked J.G. up, threw her against a wall, choked her, and threatened to kill her if she didn't listen to him. She continued to fight, throwing a hair spray bottle at him. He picked her up and started choking her again. He told J.G. to take off her clothes. Initially she resisted, but eventually complied as his threats continued. Appellant removed her pants and underwear, and put

his tongue in her vagina. He put his penis in J.G.'s mouth, and then placed his finger in her vagina. Appellant then bent J.G. over the tub and turned on the water so no one could hear. She testified at this point Boonie returned, and Appellant fled.

**{¶36}** Her testimony was corroborated by the testimony of B.S. He testified Appellant made J.G., B.S. and G.S. get in the closet. After Appellant took J.G. to the bathroom, B.S. heard Appellant say, "Suck it harder, harder." Tr. 93. He heard J.G. ask Appellant, "What if I get pregnant," and Appellant respond she was too pretty to get pregnant. Tr. 93. Boonie testified J.G. ran out of the house wearing a towel, screaming Appellant had raped her. He testified B.S. and G.S. were hysterical and scared when they came out of the closet. We find the jury did not lose its way in finding J.G.'s testimony credible despite her inability to remember the exact time of the rape.

**{¶37}** Appellant also argues the DNA evidence taken from the rape kit is entitled to little weight because of the failure of the State to prove an unbroken chain of custody. While every witness at BCI who might have handled the evidence did not testify, Andrea Dennis, the forensic scientist at BCI who tested the evidence in the kit, testified the packet is received by BCI "receiving personnel," given a barcode, and put in an evidence vault. When the analyst is ready to test the evidence, he or she takes the packet out of the vault and scans it into his or her personal custody. Tr. 254. Nothing in the record suggests BCI's internal procedures were not followed in this case. The fact not every witness who might have handled the evidence at BCI testified does not render the evidence completely unreliable.

**{¶38}** Further, the DNA results were not inconclusive as Appellant argues in his brief. While not every swab produced a conclusive result, a DNA profile taken from J.G.'s

inner thigh was consistent with Appellant's DNA profile with a rarity of one in 537 million, and DNA found on the swab taken from Appellant's penis was consistent with J.G.'s profile with a rarity of one in 4,737. The DNA evidence further corroborates J.G.'s testimony concerning the rape.

{¶39} From the physical evidence and testimony in the case, we find the jury did not lose its way in finding Appellant guilty of the charges of rape against J.G., and the judgment of conviction is not against the manifest weight of the evidence.

{¶40} Appellant further argues the State failed to prove the elements of burglary beyond a reasonable doubt. Specifically, he argues the State failed to prove he entered the home at 1289 County Road 1356 with intent to commit a criminal offense therein.

{¶41} Appellant's argument as to burglary is the conviction is not supported by sufficient evidence, rather than a claim the judgment is against the manifest weight of the evidence. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶42} Appellant was convicted of burglary in violation of 2911.12(A)(3):


(A) No person, by force, stealth, or deception, shall do any of the following:

(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to

commit in the structure or separately secured or separately occupied portion

of the structure any criminal offense.

**{¶43}** "For purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 2000–Ohio–472 721 N.E.2d 1037, syllabus. Because the language concerning "purpose to commit…any criminal offense" is also found in R.C. 2911.12, defining burglary, the rule of law set forth in *Fontes* also applies to the offense of burglary. *See State v. Evett,* 9th Dist. Medina No. 14CA0008-M, 2015-Ohio-2722, ¶ 16*; State v. Tyson,* 10th Dist. Franklin No. 10AP–830, 2011–Ohio–4981, ¶ 31; *State v. Moore,* 12th Dist. Butler No. CA2205–06–148, 2006–Ohio–2800, ¶ 8*.*

**{¶44}** The State presented evidence the motion detector alarm was set off in the home where Appellant was later found hiding in the attic. Upon entering the home, officers and the homeowner discovered the key pad and siren of the alarm system were torn from the wall. The key pad and batteries were lying in the house, and the siren box had been ripped off the wall, with wires sticking out of the wall. The siren box was located in the bathtub upstairs. The homeowner was required to replace the alarm system at a cost of $800.00. From this evidence, the jury could find during the time he trespassed in the home, Appellant formed the purpose to commit a criminal offense, i.e. criminal damaging or endangering (R.C. 2909.06). The burglary conviction is supported by sufficient evidence.

**{¶45}** The third assignment of error is overruled.

IV.

**{¶46}** In his fourth assignment of error, Appellant argues the offenses of kidnapping and rape are allied offenses of similar import.

**{¶47}** R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶48}** In the syllabus of *State v. Ruff,* 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors-the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses

involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶49}** The Court further explained:

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the

meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable. *Id.* at ¶¶ 25–26.

**{¶50}** Appellant did not raise this argument at sentencing, and therefore we must find plain error in order to reverse. The Ohio Supreme Court has recently clarified the standard of review for plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis

sic.) *Id.* at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶51}** *State v. Thomas*, 152 Ohio St.3d 15, 92 N.E.3d 821, 2017–Ohio–8011, ¶¶ 32–34.

**{¶52}** In *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), at the syllabus, the Ohio Supreme Court established a framework to analyze whether kidnapping and another offense were committed with a separate animus as to each pursuant to R.C. 2941.25(B):

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a

separate animus as to each offense sufficient to support separate convictions;

(b) Where the importation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

{¶53} J.G. testified as follows:

And he was like, get in the bathroom, and I said, no, and Rodney picked me up and threw me against the wall, and he started choking me and he said that you are going to listening [sic] to me or you are dying, and I didn't want to die, so I said okay, and he was like, sit on the toilet, and I said, no, and he slammed me on the toilet, and there was a rack with perfume bottles and I pick up a hair spray bottle and I threw it at him and he picked me up again and started choking me, and I said stop because I could not breath [sic], and then he said take off your clothes, and I said, no.

{¶54} Tr. 53.

{¶55} Kathleen Hackett, the Sexual Assault Nurse Examiner who examined J.G. at Rainbow Babies Hospital in Cleveland, noted J.G. had a red mark on her neck. Tr. 192.

**{¶56}** We find the restraint of the victim in this case subjected her to a substantial increase in risk of both physical and psychological harm, separate and apart from the rape. Physically Appellant grabbed her by the neck, holding her against the wall and choking her, leaving a noticeable red mark on her neck. Further, he threatened her with death, causing a risk of psychological harm separate and apart from the harm of the sexual assault. We therefore find the court did not commit plain error in failing to merge the kidnapping conviction with the rape convictions, as under the facts of this case, the offenses are not allied offenses of similar import.

**{¶57}** The fourth assignment of error is overruled. The judgment of the Ashland County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur